OHDE V. THE NORTHWESTERN LIFE INSURANCE CO.

**Life Insurance:** PREMIUM NOTES: CONSTRUCTION OF POLICY. A policy of life insurance, to be paid up in ten years, stipulated for the semi-annual cash payment of certain sums by the insured, and also for the execution by him to the company of an annual premium note to bear seven per cent interest, the interest thereon to be annually paid; it also stipulated further that if default should be made in the payment of any premium, the company would pay "as many tenth parts of the original sum insured, as there should have been complete annual payments:" *Held*, that the payment of the principal of the premium notes was not necessary to constitute, with the cash premiums and the payment of interest, "the complete annual premiums" upon which payment by the company was made conditional.

*Appeal from Dubuque Circuit Court.*

THURSDAY, APRIL 22.

THIS is an action by the plaintiff as administrator of Charlotte Warnecke, deceased, upon a life insurance policy issued by the defendant, upon the life of Wm. Warnecke, deceased, for the use and benefit of said Charlotte, in the sum of fifteen hundred dollars.

. Verdict and judgment for plaintiff. Defendant appeals. The further facts appear in the opinion.

*Shiras, Van Duzee & Henderson*, for appellant.

*Wilson & O'Donnell*, for appellee.

MILLER, CH. J.—The policy on which suit is brought is as follows:

"No. 11299, Age 43, Amount $1500, Premium $92.93.

The Northwestern Mutual Life Insurance Company, by this policy of Assurance,

In consideration of the representation made to them in the application for this policy, and of the sum of twenty-four dollars and eighty-four cents, to them in hand paid by Charlotte Warnecke, wife of William Warnecke, Wood Dealer, and of the annual premium note of forty-three dollars and,

twenty-five cents, and the semi-annual cash premium of twenty-four dollars and eighty-four cents, to be paid at or before noon on or before the twelfth day of July and January, in every year during the first ten years of the continuance of this policy, do assure the life of William Warnecke, of Dubuque, State of Iowa, for the sole use of the said Charlotte Warnecke, in the amount of fifteen hundred dollars, for the term of his natural life.

And the said company do hereby promise and agree to pay the said sum assured, at their office, to the said assured or her executors, administrators or assigns in ninety days after due notice and proof of death of the said person whose life is hereby assured, (the balance of year's premium, and all notes given for premiums, if any, being first deducted therefrom,) and in case of the death of the said assured before the death of said person whose life is assured, the amount of the said insurance shall be payable to the heirs at law of said William Warnecke.

And the said company further promise and agree that, if default shall be made in the payment of any premium, they will pay as above agreed as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the time of such default.

This policy is issued and accepted by the assured on the following express conditions:

1. If the said person whose life is hereby assured, shall pass beyond the settled limits or government of the United States, (except into the settled limits of the two Canadas, Nova Scotia or New Brunswick,) or west of the 100th degree of west longitude, or north of the 40th degree of north latitude, or between the 1st of July and the 1st of November, south of the parallel of the southern boundary of the State of Tennessee; or shall enter upon an aerial voyage, or a voyage on the high seas, or shall be personally engaged in blasting, mining, submarine operations, or the production of highly inflammable or explosive substances, or in working or managing a steam engine in any capacity, or as a mariner, engineer, fireman, conductor or laborer in any capacity, upon service on any sea, sound, inlet, river, lake or railroad, or shall enter any mili-

tary or naval service whatsoever, (except into the militia when not in actual service,) without previously obtaining the consent of this company, in writing in each, or either of the foregoing cases; or if he shall die by his own hand, or in consequence of a duel, or of the violation of any law of any nation, state or province, or of any injury received while in a state of intoxication, or if he shall become so far intemperate as to impair his health or to induce delirium tremens, or shall engage in, aid or abet, any insurrection against the government of the United States or any state thereof, or, if any of the statements or declarations made by or for him in the application for this policy, bearing date the twenty-second day of June, 1865, upon the faith of which this policy is issued, shall be found in any material respect untrue, then and in every such case this policy shall be null and void.

2. If the said premiums, or the interest upon any note given for premiums, shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company or to agents when they produce receipts signed by the president or secretary, then, in every such case, the company shall not be liable for the payment of the whole sum assured, and for such part only as is expressly stipulated above.

3. In every case where this policy shall cease and determine or become null and void, for other reason than non-payment of premium, all payments thereon shall be forfeited to this company.

4. If the said person whose life is hereby assured shall become in any sense an inebriate the company shall have the right to declare this policy canceled and shall be absolved from all liability under it on paying or tendering in payment to the holder thereof the amount of the "surrender value" at the time of such payment or tender, as determined by the company's table.

5. If this policy is assigned or held as security, written notice shall be given to this company, and due proof of interest produced with proofs of death.

6. This policy shall not take effect and become binding on the company until the cash premium shall be actually paid to

the company or to some person authorized to receive it during the lifetime of the person whose life is assured.

IN WITNESS WHEREOF, the said The Northwestern Mutual Life Insurance Company, at their office in FIFTY-CENT Milwaukee, have by their president and secre-REVENUE tary, signed and delivered this contract, this STAMP. twelfth day of July, one thousand eight hundred and sixty-five.

S. S. DAGGETT, President.

A. W. KELLOGG, Secretary."

The following statement of facts was admitted in evidence on the trial:

" 1.    The policy sued on; was issued July 12, 1865, at which time, the semi-annual payment of $24.84 was made, and a note for $43.25 was executed by Warnecke, of the following form, *i. e.* as shown by exhibit " B."

Upon the making of this payment and the execution of the note, the policy was delivered to Warnecke.

On the 12th of January, 1866, the semi-annual payment was made.

On the 12th of July, 1866, the semi-annual payment of $24.84 was made; also, the year's interest on the note above described, and a second note of like form and tenor for the sum of $43.84 being exhibit " C," was executed by Warnecke and delivered to the defendant and proper renewal receipt was delivered to Warnecke, in the following form, exhibit " A."

On the 12th of January, 1867, the semi-annual cash payment of $25.84 was duly made.

On the 12th day of July, 1867, Warnecke failed to pay the semi-annual cash payment then coming due, and failed to pay the annual interest then 'due, for the past year, upon the two notes above described.   No payments have since been made on said policy, or on the notes above described.

Wm. Warnecke died at Dubuque, Iowa, on 2d of October, 1869, of a natural death.   His widow, Charlotte, intermarried with one Whitman and died subsequent to the institution of this suit.   The present plaintiff has been appointed adminis-

trator of her estate, by the Circuit Court of Dubuque county, Iowa.

Proofs of death were furnished and notice of his death given to defendant, on or about July 12th 1871.

Facts touching the payment of premiums:

By section 13 of charter of the company, it is provided: "That the officers of said company may cause a balance to be struck of the affairs of the company, annually, biennially, triennially or once in five years, as the Board of Trustees may determine, and shall credit each member with an equitable share of the profits of said company."

The company commenced business in 1858. The first division of surplus was made in 1864, on the business of the five preceding years; the next in 1867, on the business of 1864; in 1868, on the business of 1865; in 1869, on business of 1866; in 1870 on business of 1867.

From 1858 to 1869, when a change was made in the note system, it was the established rule and custom of the company to collect the annual interest coming due on the premium notes in cash, the dividends being applied exclusively to the payment of the principal of the notes.

By section 13 of the charter of the company, it is provided that, "Any member who would be entitled to share in the profits, who shall have omitted to pay any premium, or any periodical payment due from him to the company, may be prohibited by the trustees from sharing in the profits of the company."

In apportioning the surplus in the shape of dividends, the trustees have uniformly refused to allow dividends to those persons who, at the time the dividend was declared, were in arrears to the company.

Under this rule, when in 1868, a dividend on the business of 1865 was made, no dividend was allowed on the policy to Warnecke, because of his not paying his premium notes in cash; and also, on account of his not paying his second premium note for $43.25, given July 12, 1866, and the interest thereon (as well as on the first note,) coming due July 12, 1867.

For the same reasons, when in 1869, a dividend was declared on the business of 1866, no dividend was allowed on said policy to said Warnecke, and for the like reasons none was allowed on the dividend declared in 1870 on the business of 1867.

In figuring up the dividends for the years 1865, 1866 and 1867, and since that date, the policy of Warnecke and all others similarly situated, were treated by the company as lapsed policies, and no longer binding upon the company.

· The per cent of dividends declared and paid to policy holders in the year 1868, on the business of 1865, was thirty (30) per cent on the total amount of each annual premium.

On the business of 1866, declared and paid in 1869, thirty-five per cent on the total amount of each annual premium. And a like per centage on the business of 1867, declared and paid in 1870.

The defendant is a corporation duly organized under the laws of the State of Wisconsin; is a mutual company, and the headquarters of its business, or home office, are at Milwaukee, Wisconsin.

There was never any surrender of the premium notes by the company to the insured, nor offer so to do; neither was there a surrender of the policy by Warnecke.

No demand was ever made upon Warnecke at any time for payment of the principal of either of the two premium notes given July 18, 1865, and July 12, 1866.

WILSON & O'DONNELL, for Plaintiff.

SHIRAS, VAN DUZEE & HENDERSON, for Defendant.

The two notes executed by Wm. Warnecke are as follows:

" $43.25.                            DUBUQUE, July 12, 1865.

" For value received, I promise to pay to the Northwestern Mutual Life Insurance Company, forty-three 25-100 dollars, with interest at the rate of seven per cent per annum, which interest shall be paid annually, or the policy be forfeited; this note, being given for part of the premium on policy No. 11299, is to remain a lien upon said policy until the death of William

Warnecke when it shall be deducted from the amount of said policy unless sooner paid. The dividends on the policy are to be applied to the payment of the note No. 1."

"$43.25. MILWAUKEE, July 12, 1866.

"For value received, I promise to pay to the Northwestern Mutual Life Insurance Company, forty-three and 25-1('0 dollars, with interest at the rate of seven per cent per annum, which interest shall be paid annually, or the policy be forfeited; this note being given for part of the premium on policy No. 11290 is to remain a lien upon said policy until it becomes due by limitation, or by the death of Wm. Warnecke, of Dubuque, when the note shall be deducted from the said policy, unless sooner paid.

The dividends on the policy are to be applied to the payment of the note.

Note No. 2. WM. WARNECKE."

The policy was issued in consideration of the representations made to the company in the application for the policy, and of the sum of twenty-four dollars and eighty-four cents cash paid in hand, an annual premium note for forty-three dollars and twenty-five cents, and the semi-annual cash premium of twenty-four dollars and eighty-four cents, to be paid on the twelfth day of July and January of each year during the first ten years of the continuance of the policy. For this consideration the company promise, by the policy, to pay the amount of the policy at the death of the assured, upon proper proof and notice thereof, less the balance of the year's premiums, *and all notes given for premiums*, if any. In ascertaining the true interpretation of the contract of insurance, the whole instrument and the terms of the notes executed in pursuance of the contract must be looked to and considered. One of the conditions of the policy is that if the premiums or the interest upon any note given for premiums, should not be paid on or before the days mentioned in the policy for the payment thereof, then in every such case the company should not be liable for the payment of the *whole* sum assured, and for such part only as is expressly stipulated in the policy.

This express stipulation is as follows: "And the said company further promise and agree that if default shall be made in the payment of any premium, they will pay as above agreed *as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the time of such default.*"

What, then, is to be considered as 'the payment of "complete annual premiums?"

It is, we think, quite clear from the whole contract that the entire premium for each year was to be $92.93, payable in two semi-annual cash payments of twenty-four dollars and eighty-four cents each on the 12th day of July and January, and the execution of a note to the company for the sum of forty-three dollars and twenty-five cents, with interest at seven per centum; that these cash payments were to be made and such a note executed each year for the "first ten years" of the policy, that it is not contemplated that these annual premium notes are to be paid each year as a condition to the continuance of the policy; on the contrary, the second condition in the policy expressly provides for, and requires only the interest upon these notes to be paid, together with the cash premiums. This condition exonerates the company from liability to pay the whole sum in case the "*premiums or the interest upon any notes given for premiums* shall not be paid," etc. This language is utterly inconsistent with the idea that a failure to pay the *principal* of these notes annually should work a forfeiture of the policy to any extent.

The agreement is to pay money *and give notes,* bearing interest, each year, and to pay the interest accruing upon these notes. It is beyond question that the assured would have no right to insist that the company should receive the entire premium in cash, for that they have not agreed to do; they have stipulated for interest bearing notes instead. More than this, the assured was, under certain circumstances, entitled to have his share of dividends applied on the notes; which also proves that these notes were to be made annually, the interest to be paid annually by the assured, and the principal to remain unpaid, except as dividends were applied to that end, and to

be liens on the policy until they should become due by limitation or death of the assured, when they should be deducted from the policy.

The doctrine is well settled in this State that the giving of a note does not operate as payment of a precedent debt, unless it be so agreed by the parties; but that doctrine does not apply to this case. Here the agreement on the part of the assured was to make certain semi-annual *cash* payments and execute annual notes and to pay the interest falling due upon such notes. The payment of the principal of the notes being otherwise provided for, first by dividends due the assured, and second by deduction from the amount of the policy when that became payable. It follows, therefore, that when the assured had made the semi-annual cash payments in July and January, executed and delivered his note for the balance of the premium as stipulated in the policy, and paid the interest due, if any, on the previously executed note or notes, then a "complete annual premium" was paid. This the assured performed for two years, which entitled his widow, upon his death, to two-tenth parts of the whole sum named in the policy, deducting therefrom the amount of the two premium notes and their accrued interest. In accord with this view, the court charged and the jury found their verdict. The judgment thereon will be

