JEMIMA SYMONDS *vs.* NORTHWESTERN MUTUAL LIFE INSUR-ANCE COMPANY.

April 9, 1877.

Life Insurance—Provision that, on Payment of the Annual Premium in each Year, the Policy shall become a Paid-up Policy for Ratable Part of Amount

**Insured—Premium Notes with Forfeiture Clause—Renewal Receipts Conditioned on Payment of Cash Part of Premium.**—A policy of insurance by a mutual life insurance company, in consideration of $115.99 in hand paid, and of the annual premium note of $101, and of the annual cash premium of $115.93, to be paid on a certain day of each year during the first ten years of the continuance of the policy, insured a life in the sum of $3,000 for the term of the natural life, and promised to pay said sum in ninety days after notice and proof of the death, (the balance of the year's premium, and all notes given for premium, if any, being first deducted therefrom,) and, if default should be made in the payment of any premium, to pay, as above agreed, as many tenth parts of the original sum insured as there shall have been *complete annual premiums* paid at the time of such default, and contained this further stipulation: "If the said premiums, or the interest upon any note given for premium, shall not be paid on or before the days above mentioned for the payment thereof, * * * then, in every such case, the company shall not be liable for the payment of the whole sum assured, and for such part only as is expressly stipulated above;" and the further condition, "In every case where the policy shall cease and determine, or become null and void, for other reasons than non-payment of premium, all payments thereon shall be forfeited to this company." The premium note given at the execution of the policy, and also each succeeding premium note, expressed no date for its payment, but was for the payment of the required amount, with interest, and contained this clause: "Which interest shall be paid annually, or the policy be forfeited. This note, being given for part of the premium on policy No. 10,885, is to remain a lien on said policy until it becomes due by limitation, or by the death of C. S., of St. Paul, when the note shall be deducted from the said policy unless sooner paid. The dividends on the policy are to be applied to the payment of the notes." What is called a "renewal receipt" was, at the time of delivering the policy, and also on payment of each annual premium, given by the company to the insured, containing this clause: "But this certificate shall not be valid and binding on the company until the cash part of the premium, as per margin, is paid, and unless the notes and interest shall be paid at the time they become due, and the receipt is countersigned by J. C. G." After the cash part of the premium and the interest on prior premium notes had been paid, and regular premium notes given, for four years, the company accepted for two succeeding years, in lieu of the cash part of the premium, notes, which, except as to dates and amounts and rates of interest, were precisely the same as the regular premium notes, with the same forfeiture clause; the regular premium notes, and interest on all prior premium notes, being given and paid at the same time. No further payment of premium or interest on notes was made, and three or four years afterwards the person whose life was insured died. It appeared that not only the policy, but the renewal receipts and premium notes, and notes given for cash premium, were prepared by the company.

**Same—Notes and Receipts, variant from Policy, construed against Company.**— *Held,* 1. That wherever the language of the renewal receipts and premium

notes is inconsistent with the express terms of the policy, or creates any ambiguity, it is to be considered the language of the company, and construed most strongly against it.

Same—Conditions of Forfeiture construed against Company.—2. That wherever such language purports to create a condition of forfeiture, it is to be construed most strongly against the company for whose benefit such condition of forfeiture is attempted to be created.

Same—Forfeiture Limited to that Part of Policy for which Premiums have not been Paid.—3. That the forfeiture mentioned in the premium notes is to be held not to be a forfeiture of the tenths to which, by the terms of the policy, the insured is entitled for payments of complete annual premiums, but a forfeiture only of the parts for which complete annual premiums have not been made.

Same—What constitutes Payment of Complete Annual Premiums.—4. That the payment of complete annual premiums, mentioned in the policy, is the payment which the insured is required to make, and can make, annually; and that in any year the giving of the premium notes, the payment of the interest on prior premium notes, and of the cash part of the premium, was a payment of a complete annual premium, and made the policy a paid-up policy for one-tenth part of the original sum insured, not subject to be defeated by future failure to pay interest on any note given for premium.

Same—Note Accepted by Company held Equivalent to Cash Payment.—5. That the giving and receiving of the notes for the cash part of the premiums for the fifth and sixth years had the same effect, so far as payment of premiums was concerned, as payment of the cash.

Same—Forfeiture Clause in Premium Notes construed with Reference to Policy.—6. That the forfeiture clauses in the notes given for the cash part of the premiums for the fifth and sixth years are not to be construed as new and independent contracts, providing for a forfeiture of the entire policy, but are to be construed with the policy, just as the regular premium notes are; and that the forfeiture referred to in them is the same forfeiture referred to in the regular premium notes, and permitted by the terms of the policy, to wit, a forfeiture of so much of the policy as had not become a paid-up policy by payment of complete annual premiums.

Same—Policy held to be Paid-up as to Six-tenths of Sum Insured.—7. That the plaintiff is entitled to six-tenths of the original sum insured, subject to such deductions as the policy provides.

Appeal by plaintiff from a judgment of the court of common pleas of Ramsey county, where the action was tried before *Brill*, J., who directed a verdict for defendant.

*Henry J. Horn*, for appellant.

*Geo. L. & Chas. E. Otis*, for respondent.

GILFILLAN, C. J.[1]   This is an action upon a policy of insurance issued by defendant in favor of plaintiff, upon the life of Charles Symonds, her husband, and dated June 13, 1865.   The portions of the policy essential to the questions involved are as follows :

" This policy of assurance witnesseth that the Northwestern Mutual Life Insurance Company, in consideration of the representations made to them in the application for this policy, and of the sum of one hundred and fifteen dollars and ninety-nine cents to them in hand paid by Jemima Symonds, wife of Charles Symonds, ice dealer, and of the annual premium note of one hundred and one dollars and ——— cents, and the annual cash premium of one hundred and fifteen dollars and ninety-three cents, to be paid at or before noon on the 13th day of June in every year during the first ten years of the continuance of this policy, do assure the life of Charles Symonds, of St. Paul, in the county of Ramsey, state of Minnesota, for the sole use of said Jemima Symonds, in the amount of three thousand dollars, for the term of his natural life.

" And the said company do hereby promise and agree to pay the said sum assured to the said assured, or her executors, administrators, or assigns, in ninety days after due notice and proof of death of the said person whose life is hereby assured, (the balance of the year's premium, and all notes given for premiums, if any, being first deducted therefrom,) and in case of the death of the said assured before the death of the said person whose life is assured, the amount of the said insurance shall be payable to the heirs-at-law of said Charles Symonds.

" And the said company further promise and agree that, if default shall be made in the payment of any premium, they will pay, as above agreed, as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the time of such default.

[1] Cornell, J., did not sit in this case.

" This is issued, and accepted by the assured, on the following express conditions :    *    *    *

" 2. If the said premiums, or the interest upon any note given for premium, shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company, or to agents when they produce receipts signed by the president or secretary, then, in every such case, the company shall not be liable for the payment of the whole sum assured, and for such part only as is expressly stipulated above.

" 3. In every case where the policy shall cease and determine, or become null and void, for other reasons than non-payment of premium, all payments thereon shall be forfeited to this company."

" 6. This policy shall not take effect and become binding on the company until the cash premium shall be actually paid to the company, or to some person authorized to receive it, during the lifetime of the person whose life is assured."

At the time of the execution of the policy, the assured paid the cash part of the premium, $115,99, and gave a premium note in this form, (omitting date and signature :)

" $101.00.   For value received I promise to pay to the Northwestern Mutual Life Insurance Company one hundred and one dollars, with interest at the rate of seven per cent. per annum, which interest shall be paid annually, or the policy be forfeited.   This note, being given for part of the premium on policy No. 10,885, is to remain a lien upon said policy until it becomes due by limitation, or by the death of Charles Symonds, of St. Paul, when the note shall be deducted from the said policy, unless sooner paid.   The dividends on the policy are to be applied to the payment of the notes."

And at the same time the company gave to her what is designated as a renewal receipt, in the following form :

Policy No. 10,885.
Annual premium......$216.93
Cash part of premium  115.93
Int. on premium note ......
Extra cash premium..  ......

Total cash............$ ......
One semi-annual note ......
Three quarterly notes ......
Loan note................ 101.00

Premium, as above, received this 29th day of June, 1865, by    J. C. GREEN, Agent at St. Paul.

*Milwaukee, June 13, 1865.*

Policy No. 10,885, insuring the life of Charles Symonds, is hereby made binding from the 13th day of June, 1865, to the 13th day of June, 1866; but this certificate shall not be valid and binding on the company until the cash part of the premium, as per margin, is paid, and unless the notes and interest shall be paid at the time they shall become due, and the receipt is countersigned by J. C. Green, agent at St. Paul.

In each of the years 1866, 1867, and 1868 the cash part of the premium, to wit, $115.93, and the interest on the prior premium note, was paid, and a premium note, of the same tenor and amount as the first, was given, and thereupon, in each instance, the company gave to the assured a renewal receipt, similar, except as to date, to the first, and except that the one given in 1868 was as follows:

Annual premium......$216.93
Cash premium for one
   year..................... 115.93
Int. on loan note...... 21.21

Total cash............$137.14
Annual loan note No.
4........................ 101.00
Premium, as above, received this 10th day of June, 1868.    J. C. GREEN, Agt.

Policy No. 10,885, insuring the life of Charles Symonds, is hereby made binding for one year from the 13th day of June, 1868, provided payment, as per margin, is made in due time, and the receipt is countersigned by J. C. Green, agent at St. Paul.

In 1869 the interest on the prior notes was paid, another premium note of the same amount and tenor as those for prior years given, and also, for the cash part of the premium, a note as follows was given:

"$115.93.        *Milwaukee, Wis., June 13, 1869.*

"For value received I promise to pay to the North-

western Mutual Life Insurance Company one hundred and fifteen 93-100 dollars, with interest at the rate of ten per cent. per annum, which interest shall be paid annually, or the policy be forfeited.   This note, being given for part of the premium on policy No. 10,885, is to remain a lien upon said policy until it becomes due by limitation, or by the death of Charles Symonds, of St. Paul, when the note shall be deducted from the said policy, unless sooner paid.   The dividends on the policy are to be applied to the payment of the notes.''

Thereupon the defendant gave the assured a renewal receipt, as follows :

| | |
|---|---|
| Annual premium......$216.93 | Policy No. 10,885, insuring the |
| Cash premium for one year.................... 115.93 | life of Charles Symonds, is hereby |
| Interest on loan note.   22.85 | made binding for one year from the |
| Total cash...........$138.78 | 13th day of June, 1869, provided |
| Annual loan note No. | payment, as per margin, is made in |
| 5......................... 101.00 | due time, and the receipt is counter- |
| Premium, as above, received the 13th day of June, | signed by J. C. Green, agent at St. |
| 1869.   J. C. GREEN, Agent. | Paul. |

In June, 1870, the interest on all the prior notes was paid, a premium note similar in tenor and amount to the first given, and, for one-half the annual cash premium, a note similar, except as to date and amount, to that given for the cash part of the premium in 1869 was given, and the defendant gave to the assured a renewal receipt for six months, similar, except as to date and time, to that given in 1869.   In December, 1870, the interest on prior notes was again paid, a note given for one-half the annual cash premium, and renewal receipt for six months given,. both similar to those given in June.

After this, no further payment, either by notes or cash, and no payment of interest on notes already given, was ever made.   Dividends were made in 1868 and 1869, and applied to the satisfaction of the first premium note, leaving a

balance of $52.31 to be applied on the second of said notes. In 1874 Charles Symonds died, and due notice and proofs of his death were given the defendant.

On these transactions, it is claimed by the plaintiff that a " complete annual premium " was paid when the cash part of the annual premium, to wit, $115.93, was paid, and the annual premium note given, as provided in the policy; and that, for each time this was done, the plaintiff, by the terms of the policy, became entitled, beyond contingency, and whatever might happen thereafter, to be paid, at the death of Charles Symonds, one-tenth part of the full amount of the policy, less the principal and interest on outstanding notes; and that, as the defendant, in 1869 and 1870, accepted notes in payment of the cash part of the premium, those two annual premiums, as well as the four preceding, were completely paid; and that she is therefore entitled to recover six-tenths of the full policy, less deductions as provided in the policy.

On the part of defendant it is claimed that, " under the policy in question, no ' complete annual premium ' was paid one moment longer than the assured kept the interest paid on the regular premium "—in other words, that, so long as any premium note was not satisfied by dividends, the interest accruing annually upon such note was a part of the " complete annual premium " for the year in which such note was given, so that, whenever any default occurred as to such annual interest, there was a failure to pay such " complete annual premium ;" and, secondly, that, if it be conceded that the construction of the phrase " complete annual premium " claimed by plaintiff is the correct one, the parties have, by subsequent contracts, subjected the entire policy to liability to forfeiture. Each of the notes given, in 1869 and 1870, for the cash part of the premium, contains, with reference to the interest stipulated in it, the clause, " which interest shall be paid annually, or the policy be forfeited." Defendant claims that each of these notes

was a new contract, which made the entire policy liable to be forfeited if the interest on such note should not be promptly paid as it became due ; and that such forfeiture was incurred by failure to pay the interest on such notes.

In discussing what is the proper construction of the original contract, it is to be taken as beyond question that an insurer may make his promise to pay upon the stipulated event depend upon full and complete performance, by the assured, of all the conditions which, by the terms of the contract, he is required to perform, and to provide, as a condition of his promise, for what is usually, though inaccurately, called a forfeiture by the assured of his rights under the contract, in case of failure to perform the conditions on his part. Insurers, as well as others, may make such contracts as they please, so that they are legal ; and the contracts are to be enforced, as in other cases, according to the intentions of the parties. But in construing a contract of insurance, and determining the intent of the parties to it, the court is not, as seems to be claimed, called upon to enter into an examination of the nature of the business of insurance, and calculations of risks and chances, and probable profits, to ascertain what sort of contract the parties could afford to make. The question in such cases always is, What contract have they made? And that is to be ascertained by applying the same rules of construction as are applied in the case of other contracts.

There is an apparent inconsistency in terms between the policy and the premium note and renewal receipt, executed, as appears, contemporaneously with it. While the note provides, as to the interest on it, (and the same clause is in each of the subsequent notes,) " which interest shall be paid annually, or the policy be forfeited "—purporting thus, in case of default at any time in paying the interest, to forfeit the entire policy, whatever may have occurred prior to such default—the policy itself provides " that, if default shall be made in the payment of any premium, they (the defendant)

will pay, as above agreed, (that is, on the death of Charles Symonds,) as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the time of such default;" and, as though this were not sufficiently explicit as to the effect, upon such tenth parts, of default in interest, "if the said premium notes, or the *interest upon any note given for premium*, shall not be paid on or before the days above mentioned for the payment thereof, * * * then, in every such case, the company shall not be liable for the payment of the whole sum assured, and for such part only as is expressly stipulated above." These clauses clearly express an intention that, any complete annual premium being paid, one-tenth part of the sum insured shall be paid by the company, notwithstanding any default, subsequent to payment of such annual premium, in the payment of any premium note, or of the interest upon any note given for premium    They provide, in effect, that, as often as a complete annual premium shall be paid, the policy shall become a paid-up policy for one-tenth of the whole amount insured, not subject to the conditions or contingencies, so far as payments are concerned, which continue as to the remainder, or unpaid part, of the policy.

The policy contemplates or provides for a forfeiture for non-payment of premiums or interest on premium notes— not a forfeiture of the paid-up part of the policy, but only of the part yet to be earned by payment of premiums. We have already referred to two clauses in the policy confining the forfeiture to the unearned part of the policy. There is a third which looks to the same effect.   The third condition is : "In every case where the policy shall cease and determine, or become null and void, for other reasons than non-payment of premium, all payments thereon shall be forfeited to this company."   There is no provision for return of premiums paid, nor any for saving to the insured, upon a forfeiture, the benefit of such payments, except those which give her, for each complete annual premium

paid, a paid-up policy for one-tenth the entire amount insured. This condition contemplates saving to the insured the benefit of her premiums paid in the manner provided in the other parts of the policy, when the policy ceases or determines merely by reason of failure to keep up payment of premiums. And while the renewal receipt, purporting to make the policy binding for the year, declares that "this certificate shall not be valid and binding on the company until the cash part of the premium as per margin is paid, and unless the notes and interest shall be paid at the time they shall become due," etc., the policy itself purports to become binding at once upon its execution, or, at any rate, that its binding effect as a contract shall be postponed only "until the cash premium shall be actually paid to the company, or to some person authorized to receive it, during the lifetime of the person whose life is assured"—a payment intended to be made at the time of the delivering of the policy.

Effect must, if possible, be given to all the words in a contract; but where different parts of a contract cannot stand together, according to their terms, they must be held to modify or qualify each other so far as may be necessary to make them, in effect, consistent with each other. If they cannot thus be made consistent, one or the other must be rejected. In determining which of two inconsistent provisions in a contract must yield to the other, there are, in a case like this, two rules of construction to which resort may be had:

*First.* Conditions providing for disabilities and forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. *Hoffman* v. *Ætna Fire Ins. Co.*, 32 N. Y. 405, 414; *Catlin* v. *Springfield Fire Ins. Co.*, 1 Sumner, 434, 440; *McAllister* v. *New England Mut. Life Ins. Co.*, 101 Mass. 558; *Kentucky Mut. Ins. Co.* v. *Jenks*, 5 Ind. 96, 103.

*Second.* Where, on the whole, the meaning is ambiguous, the language shall be construed most strongly against the party using it; or, as it is more fully stated by Mr. Justice Blackburn, in *Fowkes* v. *Manchester & London Life Assurance Association,* 3 Best & Smith, 917, 929: "If there is any ambiguous phrase, another rule of construction, which was also known to the civil law, applies — *verba chartarum fortius accipiuntur contra proferentem;* and if a party who proffers an instrument uses ambiguous words, in the hope that the other side will understand them in a particular sense, and that the court which has to construe the instrument will give them a different sense, the above rule will apply, and they ought to be construed in that sense in which a prudent and reasonable man on the other side would understand them."

As the phrases which we have quoted from the premium note and renewal receipt, and which are relied on to establish a condition to defeat the policy, do, by their letter, provide for such a condition, and, when compared with the policy, raise a doubt as to the intent of the entire contract, they ought for that reason to yield, where they cannot stand with the express provisions of the policy. There is enough, also, in the case to show that not only the policy and renewal receipts, but the notes, were prepared by the company; and the language is, on a question of construction, to be taken as its language, and, where ambiguous, construed most strongly against it. Had the clauses in the note and renewal receipt been frankly inserted in the policy, with its other provisions—as they ought to have been if the company had intended by them to make conditions to defeat or qualify its other provisions—the rules of construction we have cited would have applied, and, under them, those phrases would have had to yield to the express provisions, so far as inconsistent with them.

There is, however, a particularly apt reason for their application to this case. The policy itself is clear and

unambiguous to the effect that, for every complete annual premium paid, the company will, notwithstanding any subsequent default in payment, either of premiums or of the interest on any note given for premium, pay, upon the death of Charles Symonds, one-tenth of the whole sum insured. The policy was the principal instrument in the contract—the one which a party dealing with the company for insurance would regard as its contract of insurance, and to which he would naturally look for its promise or undertaking, with all its qualifications and limitations. It purports to set forth in full the obligations of the company, and makes no reference to any other instrument as qualifying, to any extent, such obligation. To ascertain such obligation, the party's attention would be mainly, if not entirely, directed to the policy, and his understanding of what the company undertook to do would be controlled by its terms. He would hardly expect to find the contract of insurance, or any of its terms or conditions, in the renewal receipt, which, theoretically, was mere evidence that the party had made the payments required by the policy; nor in the premium note, which, in theory, was given after the contract of insurance was made, and for the purpose of complying with that provision requiring the party, as a part of the premium, to give his note. These purposes were incidental to the principal instrument—the policy—and were, so far as regarded the company's contract, of minor importance, and less likely to attract attention, as showing that contract, than the policy itself. In these incidental instruments the company inserted clauses which it now claims shall be construed to establish conditions to defeat the policy, in a case where its express terms are directly the contrary. The ambiguity exists, not upon any language of the policy, but upon these clauses when compared with that language. A party claiming the benefit of such clauses, inserted by him in a contract made up as this was, has no reason to complain

if the court applies to the clauses the strictest rules of construction.

Wherever, then, the terms of the receipts and notes are inconsistent with the express terms of the policy, the former must yield so far as not to interfere with the force of such express terms. The utmost effect that can be given to the clauses we have quoted from the receipt and note is that they may defeat the policy except where it expresses the contrary ; and the policy expresses an intent not to forfeit, by failure to pay premiums or interest on premium notes, any tenth, where, for any such tenth, a complete annual premium has been paid. The scheme presented by the policy is that the entire premium for the entire sum insured is to be paid in ten annual premiums, and that, for each annual premium paid, the policy becomes a paid-up policy, non-forfeitable for any default in further payments, for one-tenth part of the entire sum insured. The forfeiture mentioned in the premium note must be held to be that provided in the policy, to wit, a forfeiture of the part of the policy which has not become paid-up.

What, then, constitutes payment of "complete annual premiums?" The most obvious and natural answer to this is that it is such payment as, by the terms of the contract, the insured is required annually to make. By the policy the insured is required, as a consideration for the insurance for $3,000, to pay $115.93 in cash, and give her note for $101 each year during the ten years, including the first payment. By the premium notes, which are to be taken as a part of the contract, the interest on each note is required to be paid annually. This is not merely the only annual payment that she was required to make, but it is the only one in her power to make. The premium notes are not payable at any particular time, but the clause in each—that it is " to remain a lien upon said policy, until it becomes due by limitation, or by the death of Charles Symonds, of

St. Paul, when the note shall be deducted from said policy, unless sooner paid. The dividends of the policy are to be applied to the payment of the notes "—shows that it was the intention of the parties that the principal of the notes should not be actually payable in cash at any time, but should be held by the company, to be paid by dividends falling due to the insured, or deducted from the policy at the death of Charles Symonds. The assured had no right at any time to pay off any of these notes in cash, and thus get it out of the way, because such was not the contract of the parties. For the same reason she had no right to pay the annual premium wholly in cash, instead of giving a note for part of it. The condition was not that she should pay a gross sum per annum—part to be paid in cash, and the remainder secured by note—but that she should pay $115.93 in cash, and give a note for $101, each year. The taking and holding of these notes as a means of paying anticipated dividends, and, if they were more than sufficient for that purpose, of paying, *pro tanto*, the insurance money when due, appears to have been deemed by the company a desirable mode of investment; at any rate, it has stipulated for the notes, and nothing else will satisfy the stipulation.

If the proposition be correct, "that no complete annual premium was paid one moment longer than the assured kept the interest paid on the regular premium note given to apply on such premium," then it would, as a general rule, take the assured several years to pay an annual premium; and, if the affairs of the company should be such that there would be no dividends to satisfy the premium note, he could not pay any complete annual premium during the entire life insured, though the person might live fifty years. And if that proposition be correct, the feature of the policy, that a paid-up policy for tenth parts may be acquired and be non-forfeitable, is, if not wholly defeated, made to depend on the company making profits, and distributing them in dividends. No one could so understand the contract. The

words " complete annual premium " must be construed, according to their natural sense, as meaning the premium which the assured is required to pay, and can pay, annually.

The rule as to the effect of giving a promissory note for a precedent debt has no application to these premium notes, because there was no precedent debt for which they were given. The debt, if it could be called such at all, rested on no precedent obligation, but the note alone after it was given. The note created the debt, if it were a debt.

The " complete annual premium " was to be paid, then, by giving the premium note, paying the cash part of the premium, and the interest on outstanding notes.

We have been referred to a great many cases sustaining what are called forfeiture clauses in policies of life insurance. These do not touch the question of what constitutes a complete annual premium. We have been able to find only three cases bearing upon the point. Of these, *Ohde* v. *Northwestern Life Ins. Co.*, 40 Iowa, 357, and *Bonner* v. *Northwestern Life Ins. Co.*, 3 Central Law Journal, 801, by the superior court of Cincinnati, both upon just such policies as the one in this case, are directly to the point, and decided it as we have decided it. In *Dutcher* v. *Brooklyn Life Ins. Co.*, 3 Dillon, 87, the construction of a clause in a policy of life insurance, somewhat similar to the one involved in this case, was in question; and, although the decision of the court does not go solely upon the terms of the policy, the leading opinion intimates that the court considered the clause should be construed as we have construed the policy in this case.

There can be no question that the notes given in 1869 and 1870 were received in lieu and in satisfaction of the cash part of the annual premiums for those years, and that the giving of them had, so far as payment of such premiums was concerned, the same effect as payment of the cash would have had. Was it intended by the insertion in them of the clause, " which interest shall be paid annually, or

the policy be forfeited," to make a new and independent contract, providing for the forfeiture, not merely of what we may call the continuing or running part of the policy, but also of that part already earned or paid up? They were not executed at the same time with the policy, it is true,. and the reason that, because of being contemporaneous as to actual date, they must be construed with it, does not exist. It was the same with regard to the regular premium notes after the first. Yet, as those notes were provided for in the policy, and were drawn after a form employed by the company at the time the policy was executed, and in precisely the same form as the note executed at the same time with the policy, those premium notes cannot be regarded as intended to vary the original contract between the parties,. but, notwithstanding the difference in the time of execution,. they are to be construed, as was the first of the series, with the policy. The original contract seems to have contemplated that notes might be given for cash premium. In the margin of the renewal receipt, given when the policy was executed—and it was the same in each of the two following it—were these entries : " One semi-annual note, $———;'" " three quarterly notes ;" " loan note, $101." The " one semi-annual note," and " three quarterly notes," did not refer to the regular premium notes, and must have referred to notes which might be received by the company for the cash premium. When the company received notes for the cash part of the premium, it used the form in which the entire series of premium notes was drawn. Each of the notes in 1869 and 1870 was, except as to the principal sum,. the rate of interest, and date, in the precise language of the first premium note. These facts are more important. than the mere fact that they were executed after the policy,. in determining whether these notes are to be regarded as independent contracts, or are to be construed with reference to, and together with, the policy. We think they are to be construed with the policy, just as the premium notes.

are, and that the forfeiture referred to in them is the same referred to in the premium notes, and permitted by the terms of the policy.

The conclusion is that there were, on this policy, six complete annual premiums paid, and that, to the extent of six-tenths, the policy is a paid-up policy, not subject to forfeiture for non-payment, either of premiums, or interest on notes given for premiums, accruing after the last of the six payments.

Judgment reversed, and new trial ordered.