THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY *vs.* Ross, administratrix.

A life policy contained a promise to pay sixty days after death the amount of insurance, "the balance of the year's premium and all notes given for premium, if any, being first deducted therefrom." Also, the following stipulations : " At· each distribution of the surplus after two years from the date hereof, a due proportion of such surplus on each and every year's business during the continuance of this policy, will be returned to the assured. . . . And the said company further promises and agrees that if default shall be made in the payment of any premium, it will pay as above agreed as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default. But in order to secure such proportion of the policy, all premium notes must be taken up, or the interest thereon be annually paid in cash, on the date of the annual maturity of the premium, or within three months thereafter, until the notes are canceled by the return of the surplus, or the whole policy will be forfeited; unless one or more annual payments have been made in full by cash payment or by application of the dividend. If the said premiums or the interest upon any note given for premiums shall not be paid on or before the days above mentioned for the payment thereof, then and in every such case, the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, and the remainder shall cease and determine." Also the following indorsements: "This policy is non-forfeitable. Each complete yearly payment secures its proportion of the policy. Loan notes are not assessable, and are to be paid only by the dividends, or by deduction from the policy when it matures. If payments of premiums are at any time discontinued, this policy is full paid for an amount equal to as many proportionate parts of the original insurance as there have been complete annual premiums paid at the time of default."

The assured paid the cash part of premiums for three years—$46.00 each—and gave three notes, one each year, for the balance, making outstanding in May, 1874, in notes, $60.63, and due plaintiff from dividend $11.31—being more than enough to pay all interest due on notes. From the annual receipts it appeared that interest on note for one year had been paid in cash, but the cash premiums had been received and notes taken without regard to non-payment of interest on the others. The notes contained in them the recital, "with interest at the rate of seven per cent. per annum, which interest shall be paid annually, or the policy be forfeited."

No premium was paid in 1874, and the assured died in 1876, and his

administratrix, being his mother, he being a minor of seventeen years of age when he died, sued for three-tenths of the $2,000.00 policy, less the notes."

*Held,* that this court will follow the ruling of the supreme court of Wisconsin, the state of defendant's home residence, in the case of Hull, administrator, *vs.* the same company, 39 Wisconsin, 397, on a similar policy, and will hold that under the construction of an ambiguous policy, to be construed most strongly against the insurer, the plaintiff can recover the three-tenths sued for less the notes.

*Held,* further, that defendant has not acted in bad faith, or been stubbornly litigious, or given plaintiff unnecessary trouble and expense, so far as the record discloses the facts of the case, and therefore there is no evidence to support the finding of one hundred dollars counsel fees—the true meaning of the contract being in doubt, and the legal principles governing its construction having been differently decided and applied by the appellate courts of different states.

Insurance. Contracts. Verdict. Before Judge HILLYER. Fulton Superior Court. September Term, 1878.

Mrs. Ross sued the insurance company on a policy of insurance on the life of Wm. H. Ross. The defendant pleaded (1), the general issue; (2), that the insured had forfeited the policy by non-compliance with its terms; (3), that plaintiff had forfeited dividends; and (4), that if there was any recovery, unpaid premium notes must be deducted.

On the trial the jury found for the plaintiff $688.00 and $100.00 for attorney's fees. Defendant moved for a new trial. It was refused, and defendant excepted.

For the other facts, see the opinion.

B. HILL & SON, for plaintiff in error.

W. R. BROWN; E. A. ANGIER; A. C. KING, for defendant.

JACKSON, Justice.

Two questions are made by this record, first, what is the true construction of the contract sued on, and secondly,

has the insurance company so acted in regard to the defense of this case or been so stubbornly litigious that counsel fees for the plaintiff should be found against it under our Code?

1. The material facts are as follows:

The action is upon a policy of insurance, issued upon the ten-year payment plan, by plaintiff in error, in favor of William H. Ross, upon his life, dated 31st of May, 1871, premiums payable annually, partly in cash and partly by loan notes. Ross made three complete annual payments, but not all cash. Mrs. Ross, after the death of her son, brought suit as administratrix. The portions of the policy essential to the questions involved, and material to a clear understanding of the points made, are as follows:

"*Number* 61918.   •   *Age*, 12.

*Amount*, $2,000.   *Premium*, $68.23

"The North-Western Mutual Life Insurance Company by this policy of assurance, in consideration of the representations made in the application therefor, and of the premium in advance, as herein stipulated, consisting of the semi-annual cash premium of twenty-three dollars, to be paid at or before noon on or before the 31st day of May and November, and of an annual loan note, with interest, of twenty-two and 32-100 dollars, to be given in every year during the first ten years of the continuance of this policy, doth assure the life of William H. Ross, a student of Augusta, in the county of Richmond, state of Georgia, for the benefit of himself, in the amount of two thousand dollars, for the term of his natural life." "And the said company doth hereby promise and agree to pay the said sum assured, at its office, to the said beneficiary or his executors, administrators or assigns, in sixty days after due notice and proof of death, of the said person whose life is hereby assured (the balance of the year's premium and all notes given for premium, if any, being first deducted therefrom). In case of the death of the said beneficiary before the death of the person whose life is assured, the amount of the assurance shall be payable at maturity to the heirs and assigns of the said person whose life is assured." . . . "At each distribution of the surplus after two years from the date hereof, a due proportion of such surplus on each and every year's business, during the continuance of this policy will be returned to the assured." . . . "And the said company further promises and agrees, that *if default* shall be made in the payment of

*any premium,* it will pay, as above agreed, as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default. But in order to secure such proportion of the policy, all premium notes must be taken up, or the interest thereon be annually paid in cash, on the date of the annual maturity of the premium, or within three months thereafter, until the notes are canceled by the return of the surplus, or the whole policy will be forfeited ; *unless one or more annual payments have been made in full, by cash payment or by application of the dividend.*"

"*If the said premiums or the interest upon any note* given for premiums shall not be paid on or before the days above mentioned for the payment thereof, then, and in every such case, the company shall not be liable for the payment of the *whole sum assured, but only for such part thereof as is expressly stipulated above,* and the *remainder* shall cease and determine."

There was indorsed on the policy this statement : "*This policy is non-forfeitable.* Each complete yearly payment secures its proportion of the policy." " Loan notes are not assessable, and are to be paid only by the dividends, or by deduction from the policy when it matures, if any are then outstanding." "If payments of premiums are at any time discontinued, this policy is full paid for an amount equal to as many proportionate parts of the original insurance as there have been complete annual premiums paid at the time of such default."

To which suit the company filed on the day of the trial of the case the pleas contained in the record.

Ross paid $23.00 in May, the same amount in November, and gave loan notes for $22.32, which constituted the annual payment.

Defendant in error read in evidence the five renewal receipts found in the record, of which the following is a copy of one of them :

"Home Office, Milwaukee, Wis.,

North-Western Mutual Life Insurance Company.

Policy No. 61918, insuring the life of William H. Ross, is hereby made binding for six months from the 31st day of May, 1872, provided payment as per margin is made in due time, and the receipt is countersigned by William H. White, Agent at Atlanta, Ga.

August Gaylord, *Secretary.*"

The Northwestern Mutual Life Insurance Co. *vs.* Ross, administratrix.

| | | |
|---|---|---|
| Cash premium for six months . . . . . . | $23 | 00 |
| Interest on loan notes . . . . . . . | 1 | 50 |
| Total cash . . . . . . . | 24 | 50 |
| Annual loan note No. 2 . . . . . . . | 22 | 32 |

Premium as above received this 30th day of May, 1872.

WM. H. WHITE, *State Agent.*"

"For terms of mutual agreement see policy."

Defendant in error further read in evidence the following paper :

"THE NORTH-WESTERN MUTUAL LIFE INSURANCE Co's. OFFICE
Broadway, corner Wisconsin Street, Milwaukee, Wis.

*W. H. Ross :* On payment of the renewal premium due May, 1874, on policy No. 61918, the dividend of surplus on the business of the year 1872, will be applied as stated below :

| | | |
|---|---|---|
| Dividend . . . . . . . . | $11 | 31 |
| Part of which will be applied to payment of interest on notes of $38.37 . . . . . | 2 | 69 |
| The remainder being indorsed on notes . | $8 | 62 |
| Amount of outstanding notes . . . . | $60 | 69 |
| To be indorsed on notes as above . . . | 8 | 62 |
| Notes remaining . . . . . . . | $52 | 07 |

E. McCLINTOCK, *Actuary.*"

Defendant in error having introduced and read in evidence the policy, the renewal receipts, and Mrs. Ross' interrogatories and the above notice, closed, having proved by B. H. Hill, Jr., that as the company's counsel he was familiar with the services rendered by Messrs. Brown & Angier, attorneys for defendant in error, and a fair fee for those services would be $100 or $150. The company then tendered in evidence the notes of the assured, and proved by Dr. White that those renewal receipts evidenced all the money, with the policy, that had been paid the company. The following is a copy of one of the notes :

"MILWAUKEE, WIS., May 31, 1871.

For value received I promise to pay to the North-Western Mutual Life Insurance Company, twenty-two 32-100 dollars with interest at the rate of seven per cent. per annum, which interest shall be paid annually,

13

or the policy be forfeited ; this note being given for part of the premium on policy No. 61918, is to remain a lien upon said policy until it becomes due by limitation, or by the death of William H. Ross, of Augusta, when the note shall be deducted from said policy, unless sooner paid.

W. H. Ross "

"The dividends on the policy are to be applied to the payment of the notes." Note to No. 1 : "The interest hereon for the first year has been paid."

For three years the premiums were paid partly in cash and the remainder in notes of which the above is a copy. At the beginning of the fourth year, to-wit : May 31, 1874, default was made, and the question of construction is whether the true intent and meaning of the policy is that it was entirely forfeited by this failure, or whether three-tenths can be recovered ? The record is confused in respect to whether the dividends due Ross extinguished the interest on the notes or not, and on the ground that the plaintiff in error must show error, we might rest the case here and affirm the judgment.

But the legal question, we think, must be decided against the plaintiff in error without regard to this confusion and uncertainty. The contract, where its meaning is in doubt, should be construed against the insurer. It is drawn by the company. Parts of it look that its meaning is that the three annual payments must have been made in cash to entitle the insured to recover three-tenths. Other parts of it conflict with this view. On similar policies there have been contradictory decisions in different states; but in Wisconsin, the home of the plaintiff in error, in a case between it and an insured party on a policy like this, and a case almost if not entirely parallel with this, the construction is adverse to the plaintiff in error. 39 Wisconsin, 397. We shall follow that case. Certainly we ought not to give to an insured party resident in Georgia against a foreign corporation less than the home court of the corporation would have given, had the suit been brought in Wisconsin. Of this the Wisconsin corporation cannot complain.

Besides, we think that the better reasoning, and therefore the better authority, is with that court. The notes given in part payment of the annual premiums are loan notes. It is the same as if all cash was paid and then part handed back and loaned to the insured—the same in substance and legal effect. It is a complete payment according to the contract taken in all its parts, and read, as it should be, most strongly against the writer of it. Any other construction would enable the insurer to deceive the assured. For three years the notes were given and received without objection, and as to past action the rights of the assured were fixed. Had he died then—at the expiration of three years—his administratrix could have recovered. What he neglected afterwards to do would forfeit anything to come due afterwards, but nothing then due.

This view is strengthened by the authority of the supreme court of the United States in Brooklyn Life Ins. Co. *vs.* Dutcher—Reporter for 1878, p. 97; and by the views of the court of appeals of Kentucky—Reporter, 1878, p. 361; and the supreme court of Indiana—Reporter, 1878, p. 262.

See also 23 Minnesota, 491: 40 Iowa, 357; also 55 *Ga.*, 111, indicates a leaning on the same general line. Other courts of the last resort have held differently.

2. But we do not think that the insurance company should have been made to pay counsel fees. Section 2850 of our Code makes the company liable for fees of the opposing counsel when "it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith." Where the highest courts of the country have differed in respect to the construction of a contract, and, in this state, the principle, though hinted at, had never been settled, it cannot be that to test the question here is in *bad faith.* The counsel fees will be stricken from the verdict, and that being done, the judgment is affirmed.

Judgment reversed on terms.