## THE NORTH-WESTERN MUTUAL LIFE INSURANCE COMPANY *v.* LITTLE.

·LIFE INSURANCE.—*Construction of Contract.*—*Failure to Pay Premiums.*—A policy of insurance for five thousand dollars on the life of A., issued by a mutual life insurance company in favor of B., wife of A., purported to be issued in consideration of $148.10 paid to said company by B., and of the annual premium note of $110.00 and the annual cash premium of $148.10 to be paid on or before noon on a certain day in every year during the first ten years of the continuance of the policy; and said policy stipulated that said company thereby promised and agreed to pay the sum assured, at, etc., to, etc., ninety days after due notice and proof of the death of A., the balance of the year's premium and all notes given for premiums, if any, being first deducted therefrom; that if default should be made in the payment of any premium, the company would pay, "as above agreed," as many tenth parts of the original sum insured as there should have been complete annual premiums paid at the time of such default; that if said premiums or the interest upon any note given for premiums should not be paid on or before the days above mentioned for the payment thereof, at, etc., the company should not be liable for the whole sum assured, and for such part only as above expressly stipulated; and that when the policy should cease and determine, or become null and void for other reasons than the non-payment of premiums, all payments thereon should be forfeited to the company. A., at the time of the issuing of said policy, paid said cash premium, and executed to the company his premium note, whereby he promised to pay said company (no time of payment being specified) $110.00, with interest at the rate of seven per cent. per annum, and that said interest should be paid annually, "or the policy forfeited;" said note reciting that it was given for part of the premium on said policy, referring to it by its number, and was to remain a lien upon said policy until it became due by limitation or by the death of A., when said note should be deducted from said policy, unless sooner paid, and that the dividends on the policy were to be applied to the payment of the note. A., annually on the days stipulated, paid two other cash premiums of the same amount and executed two other like notes, and paid the interest for the first and second years on the first and second notes, but made no further payments of premiums or interest, though the company, through its agent, after the date for the fourth payment, offered A. to renew, reinstate and restore the policy, if he would pay the premiums and the interest on said notes in arrears. Afterward A. died.

*Held,* in an action by B. on said policy, that she was entitled to recover of said company three-tenths of the original amount insured, subject to a deduction of the principal of the three notes so given.

From the Marion Superior Court.

*C. Baker, O. B. Hord, A. W. Hendricks* and *W. Wallace*, for appellant.

*F. M. Finch* and *J. A. Finch*, for appellee.

NIBLACK, J.—This is an action by Lizzie Little, against the North-Western Mutual Life Insurance Company, upon a policy of insurance issued to her on the life of Samuel J. Little, her late husband. The policy was for five thousand dollars, and was issued on the 5th day of June, 1866. It purports to have been issued in consideration of " one hundred and forty-eight dollars and ten cents to them in hand paid by Lizzie H. Little, wife of Samuel J. Little, general railroad agent, and the annual premium note of one hundred and ten dollars, and the annual cash premium of one hundred and forty-eight dollars and ten cents, to be paid at or before noon on or before the 5th day of June, in every year, during the first ten years of the continuance of this policy."

The policy also contains other provisions and stipulations, material to the decision of this case, as follows: "And the said company do hereby promise and agree to pay the said sum assured, at their office, to the said assured, or her executors, administrators, or assigns, in ninety days after due notice and proof of the death of said person whose life is hereby assured (the balance of the year's premium and all notes given for premiums, if any, being first deducted therefrom). * * *

"And the said company further promise and agree, that if default shall be made in the payment of any premium, they will pay, as above agreed, as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the time of such default. * *

" If the said premiums, or the interest upon any note given for premiums, shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company, or to agents when they produce

receipts signed by the president and secretary, then, in every such case, it shall not be liable for the payment of the whole sum assured, and for such part only as is expressly stipulated above.

"In every case where this policy shall cease and determine, or become null and void for other reasons than the non-payment of premiums, all payments thereon shall be forfeited to this company."

The complaint alleges the payment of three full and complete annual premiums on said policy; also, the death of Samuel J. Little, on the 24th day of June, 1873, of which the company had notice.

The defendant answered in two paragraphs.

The first paragraph admits the issuing of the policy as stated in the complaint, but sets up the execution of a note by the said Samuel J. Little for the sum of one hundred and ten dollars, for a part of the premium for which a credit was given, which was as follows:

"$110.00.            Milwaukee, June 5th, 1866.

"For value received, I promise to pay to the North-Western Mutual Life Insurance Company one hundred and ten dollars, with interest at the rate of seven per cent. per annum, which interest shall be paid annually or the policy forfeited. This note, being given for part of the premium on policy No. 16,757, is to remain a lien upon said policy until it becomes due by limitation, or by the death of the said Samuel J. Little, of Nashville, when the note shall be deducted from said policy unless sooner paid. The dividends on the policy are to be applied to the payment of the note.

   (Signed,)                "Samuel J. Little."

It is further alleged, that the said Samuel J. Little, in his lifetime, did make three annual cash payments of premium on said policy of one hundred and forty-eight dollars and ten cents each, including the first cash premium mentioned in the policy as paid in hand, and did execute and deliver to the defendant three annual notes of like

amount, tenor and effect as, and including, the one herein as above copied, and did pay the annual interest on said notes for the years 1867 and 1868, according to the terms and conditions of the contract of insurance, but that he made no further payment on any of the remaining annual premiums or of interest on said notes. Wherefore it is claimed that the policy was forfeited before the death of the said Samuel J. Little.

The second paragraph sets up substantially the same facts alleged in the first, but more in detail and in a somewhat different form, concluding with an averment, that, on the 10th day of January, 1870, the defendant, through its agent, at Nashville, Tennessee, offered to the said Samuel J. Little to renew, reinstate, and restore said policy of insurance, if he would pay the premiums and the interest on said notes in arrears.

Both paragraphs of the answer were demurred to by the plaintiff, but the demurrers were overruled. The plaintiff then replied in eight paragraphs, to all of which demurrers were sustained, and, refusing to reply further, judgment was rendered for the defendant.

The defendant appealed to the general term of the court below, where the judgment at special term was reversed, and the cause remanded, with instructions, which, in legal effect, required the demurrers to be sustained to both paragraphs of defendant's answer. See 5 Ins. Law Journal, p. 149.

The defendant has appealed to this court, and has assigned for error the action of the court below in general term.

It is insisted by the appellant, that the facts alleged in each paragraph of the answer show that no complete annual premium was paid on the policy sued on, and that hence both paragraphs contain a good defence to the action.

In support of that position, it is urged that the execution of the notes given for portions of the annual premi-

ums did not constitute a payment of the sums of money represented by said notes, within the meaning of the provisions of the policy. That, although the original and renewal receipts may acknowledge the payment of three full premiums, yet it is competent for the appellant to aver and show that those portions of the premiums represented by the notes are still unpaid. Also, that by the terms of these notes the policy was forfeited by reason of the non-payment of interest upon them, on and after June 5th, 1869.

To sustain these views, familiar and well recognized authorities are cited, and the only question with us as to these authorities is as to whether they are applicable to the case before us.

It is our duty to construe the policy and all the other papers relating to, and connected with, it together, and to give such force and effect to them collectively as seem to be consistent with the manifest intention of the contracting parties.

The general plan or scheme of this policy is plainly opposed to an entire forfeiture in default of the payment of any premium falling due after it was issued, and the notes executed for portions of the premiums, we think, when construed with the policy, do not essentially affect or modify its general plan or scheme. The forfeiture provided for in these notes can not, it seems us, be made to apply to the paid up premiums, but only to future benefits which might have been derived from the policy. This construction, we think, is impliedly, yet strongly, sustained by some of the conditions on which the policy was accepted.

It is provided in the second condition, that, "If the said premiums, or the interest upon any note given for premiums, shall not be paid on or before the days above mentioned for the payment thereof, * * * then, in every such case, it" (the company) "shall not be liable for the payment of the whole sum assured, and for such

part only as is expressly stipulated above ;" that is, for as many tenth parts of the original sum insured as complete annual premiums have been paid at the time of such default.

The third condition provides, that, " In every case where this policy shall cease and determine, or become null and void, for other reasons than non-payment of premiums, all payments thereon shall be forfeited to the company ;" from which, taken in connection with the second condition, the reasonable, if not inevitable, inference is, that where the future benefits, arising from the policy, have been forfeited on account of the non-payment of premiums, or of the interest on any premium note, such forfeiture does not carry with it the payments already made on the policy. In other words, that the forfeiture for the non-payment of premiums, or of interest on premium notes, only applies to so much of the policy as is not paid up.

It is a well settled rule of law, that the execution of a promissory note, not governed by the law merchant, does not usually operate as a payment of a pre-existing debt, or of the debt of which such note constitutes the evidence. That rule, however, applies to such instruments as are commonly known as, or as are analogous to, promissory notes having a definite time of payment and collectible by the usual methods of legal proceeding, and not, we think, to such obligations as those constituting the premium notes in this case. These latter notes, so called, are not, strictly speaking, promissory notes. They are not payable at any denifite time or in the usual way. They afford evidence simply that portions of certain annual premiums on the policy have been loaned or advanced to the assured to be repaid by dividends, or on the death of the said Samuel J. Little, out of the proceeds of the policy. Except in so far as these obligations provide for the payment of an annual interest, they impress us as partaking more of the nature of receipts

for money loaned or advanced out of a particular fund, in which the assured had an interest, to be thereafter accounted for on some future settlement with that fund, than of promissory notes. The payment of the principal of these obligations, except by dividends on the policy or out of the proceeds of it after the death of Samuel J. Little, seems not to have been contemplated. It appears to us at all events not to have been intended that the principal of these notes would have to be paid as a condition precedent to a recovery on the policy.

The answer shows, that when the policy was issued, on the 5th day of June, 1866, a cash premium of one hundred and forty-eight dollars and ten cents was paid, and a premium note, as it was called, was given for one hundred and ten dollars, bearing an annual interest of seven per cent. That appears to have been recognized as a payment of the first annual premium, according to the terms of the policy, and in consideration of such payment the company agreed to carry the risk for one year.

On the 5th day of June, 1867, a like cash premium of one hundred and forty-eight dollars and ten cents was paid on the policy, together with the further sum of seven dollars and seventy cents for interest on the first premium note for the preceding year. In addition, another premium note for one hundred and ten dollars, bearing a like annual interest of seven per cent., was given. These last named payments and note carried the risk through another year, according to the terms of the policy.

On the 5th day of June, 1868, a further cash premium of one hundred and forty-eight dollars and ten cents was paid, and the interest on the two outstanding premium notes, amounting to fifteen dollars and forty cents, was also paid. A third premium note for one hundred and ten dollars was also given. These payments, together with the execution of said third premium note, under the terms of the policy, carried the risk until the 5th day of June, 1869.

These several cash payments, together with the execution of the three premium notes, as above stated, constituted, in our estimation, the payment of three complete annual premiums on the policy, and entitle the appellee to recover three-tenths of the original sum insured, subject to a deduction of the principal sums due on the premium notes. *Ohde* v. *The Northwestern Life Ins. Co.*, 5 Iowa, 357; *Hull* v. *Northwestern Mut. Life Ins. Co.*, 5 Ins. Law Journal, 828; S. C., 39 Wis. 397; *Bonner* v. *Northwestern Mut. Life Ins. Co.*, (Superior Court of Cincinnati) 3 Cent. Law Journal, 801; *Symonds* v. *Northwestern Mut. Life Ins. Co.*, (S. C. Minnesota) 6 Ins. Law Journal, 605; *Kirkpatrick* v. *Knickerbocker Life Insurance Co.*, (S. C. Tennessee) 6 Ins. Law Journal, 368; *St. Louis, etc., Insurance Co.* v. *Grigsby*, 4 Bigelow Ins. Rep. 633; *Dutcher* v. *Brooklyn Life Insurance Co.*, 4 Bigelow Ins. Rep. 665.

We are, therefore, of the opinion, that the court below in general term did not err in reversing the judgment rendered in this cause at the special term, and, hence, that the proceedings below in general term ought to be affirmed.

The judgment of the general term is affirmed, at the costs of the appellant.