Ewald vs. The Northwestern Mutual Life Insurance Company.

*April 11 — May 15, 1884.*

*Life Insurance — Forfeiture — Failure to pay interest on premium notes.*

1. A forfeiture stipulated in a contract will be enforced if the rights of the parties cannot otherwise be preserved.

2. The holder of a policy of life insurance will be presumed to understand its various provisions for forfeiture by which he may suffer loss through his own fault, and cannot complain of hardship from a forfeiture when he suffers voluntary default.

3. A policy of endowment insurance recites that in consideration of the annual premium in advance, consisting of an annual premium note, "the interest on which must be paid annually in cash at the date of the maturity of the annual premium," and of a quarterly cash premium to be paid in every year during the first ten years of the continuance of the policy, the company assured the life of the plaintiff for the term of eleven years, and agreed to pay the sum assured to him at the end of that period, or, in case of his previous death, to the beneficiary in sixty days after notice, etc., "the balance of the year's premium and all notes given for premiums, if any, being first deducted therefrom." It provides that at each distribution of the surplus, after three years, a due proportion of such surplus on each year's business, during the continuance of the policy, shall be returned to the assured. The com-

pany further "agrees that if default shall be made in the payment of any premium, it will pay as above agreed, as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default; but in order to secure such proportion of the policy all premium notes must be taken up, or the interest thereon be paid anually in cash, on the date of the annual maturity of the premium, until the notes are canceled by returns of the surplus, *or the whole policy will be forfeited.*" Among the conditions of the policy are these: "If the said premiums, or the interest upon any note given for premiums, shall not be paid on or before the days above mentioned for the payment thereof . . . the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, *and the remainder shall cease and determine.*" "In every case where this policy shall cease or become null and void, all payments thereon shall be forfeited to the company." Premium notes given by the assured provided that the interest thereon should be paid annually or the policy be forfeited; that, being given for parts of the premiums, they were to remain a lien upon the policy until it became due by limitation or by the death of the assured, when they should be deducted from the policy, unless sooner paid; and that the dividends on the policy should be applied to the payment of the notes. It was the invariable practice of the company to require the interest to be paid annually in cash, and to apply dividends upon the principal of the notes. The plaintiff paid four annual premiums, giving four notes and paying the quarterly cash premiums, and during four years also paid the interest due on said notes; but thereafter failed to make payments of any kind or to give any further premium notes. In an action, commenced after the expiration of the term of the policy, to recover four tenths of the original sum assured, *held,* that by reason of the plaintiff's failure to pay annually in cash the interest upon the four premium notes given by him, the whole policy became forfeited.

APPEAL from the County Court of *Milwaukee* County.

Action upon a policy of endowment insurance issued June 3, 1867, to recover the sum of $400 alleged to be due thereon, together with interest on said sum from June 3, 1878.

The policy recited that, in consideration of "the annual premium in advance, consisting of an annual premium note

Ewald vs. The Northwestern Mutual Life Ins. Co.

of $36.71 (the interest upon which must be paid annually in cash at the date of the maturity of the annual premium), and of the quarterly cash premium of $14.16 to be paid at or before noon on or before the 3d day of June, September, December, and March in every year during the first ten years of the continuance of this policy," the company assured the life of the plaintiff in the amount of $1,000 for the term of eleven years from its date. The company agreed to pay said sum assured to the person whose life is assured in eleven years from the date of the policy, or, in case of his previous death, to the beneficiary "in sixty days after due notice and proof of such death (the balance of the year's premium and all notes given for premiums, if any, being first deducted therefrom." The policy further provided that at each distribution of the surplus, after three years from its date, "a due proportion of such surplus on each and every year's business, during the continuance of this policy, will be returned to the said assured." Other provisions and conditions of the policy are stated in the opinion.

The premium notes mentioned in the policy were given in the years 1867, 1868, 1869, and 1870, but not thereafter. They were in substantially the following form:

"For value received I promise to pay to the *Northwestern Mutual Life Insurance Company*, $36.71, with interest at the rate of seven per cent. per annum, which interest shall be paid annually, or the policy be forfeited; this note being given for part of the premium on Policy No. 23,555, is to remain a lien upon said policy until it becomes due by limitation or by the death of *August Ewald*, of Milwaukee, when the note shall be deducted from the said policy unless sooner paid. The dividends on the policy are to be applied to the payment of the notes."

The quarterly cash premiums were paid up to and including the one due on March 3, 1871, and not thereafter. On June 3, 1871, the plaintiff paid the interest then due on the

four premium notes given by him, but failed thereafter to make any payment of such interest.

The defendant in its answer claimed that by reason of the foregoing facts, the policy became forfeited except as to four tenths thereof on June 3, 1871, and became wholly forfeited on June 3, 1872.

The circuit court instructed the jury, in effect, that the giving of the four premium notes and payment of the cash premiums during four years, secured each year one tenth of the amount of the policy; that the four tenths thus secured were equivalent to a paid-up policy and could not be forfeited by failure to pay interest on the notes. The jury were directed to find a verdict for the plaintiff for $400 with interest from June 3, 1878, less the amount of the premium notes and interest. A verdict was accordingly returned for $291.20, and from the judgment entered thereon the plaintiff appealed.

*D. G. Hooker*, for the appellant.

*E. G. Comstock*, for the respondent, contended, *inter alia*, that a one-tenth interest in the policy vested each year for four years, and could not be divested or forfeited by any failure to pay interest accruing subsequently. *N. W. M. Life Ins. Co. v. Ross*, 63 Ga., 199; *N. W. M. Life Ins. Co. v. Little*, 56 Ind., 504; *Montgomery v. Phœnix M. Life Ins. Co.*, 14 Bush, 51; *Ohde v. N. W. Life Ins. Co.*, 40 Iowa, 357; *Symonds v. N. W. M. Life Ins. Co.*, 23 Minn., 491; *Insurance Co. v. Bonner*, 36 Ohio St., 51; *Fithian v. N. W. Life Ins. Co.*, 4 Mo. App., 386; *St. Louis M. Life Ins. Co. v. Grigsby*, 10 Bush, 310; *Franklin Life Ins. Co. v. Wallace*, 93 Ind., 7. Dividends should be applied so as to save a forfeiture if possible. *Hull v. N. W. M. Life Ins. Co.*, 39 Wis., 397; *Goodwin v. Hardy*, 57 Me., 143; *Smith v. St. Louis M. Life Ins. Co.*, 2 Tenn. Ch., 727; *Nettleton v. St. Louis Life Ins. Co.*, 7 Biss., 293; *Mutual Life Ins. Co. v. Girard Life Ins. Co.*, 100 Pa. St., 172; *Continental Life Ins. Co. v. Goodall*, 5 Big. Ins. Cas., 422.

Orton, J.   This suit is brought upon a policy of endowment insurance, issued by the company to the plaintiff, bearing date June 3, 1867, to recover four-tenths of the $1,000 of insurance, and interest, on the ground of full payment of the cash premiums and of the interest on the premium notes for such years.   After the first four years from the date of the policy the plaintiff failed to pay any more cash premiums, or to give any more premium notes, or to pay any more interest upon the premium notes given for such years, and the defendant company declared a forfeiture of the whole policy, and notified the plaintiff thereof.

The plaintiff claims (1) that by the terms of the policy he is entitled to four tenths of the whole insurance, because he has paid fully the cash premiums and interest on the premium notes for such years, if he had entirely failed to give the premium notes and to pay the cash premiums and the interest on the premium notes which he gave for the first four years, thereafter, during the life of the policy; and (2) that there were dividends of surplus, from year to year, due him from the company, sufficient to pay such interest.

The defendant contends (1) that by the terms of the policy it could be forfeited *in toto* by the company upon the failure of the assured to pay the interest in cash upon such premium notes at the end of each year during the time of the policy; and (2) that the policy should have such a construction, if possible, because absolutely necessary and essential to the continued business of the company in this department of insurance, and to any estimates of future resources, dividends, or liabilities upon the basis of interest paid on all premium notes outstanding, and the anticipation thereof as one of the certain and permanent resources of the company for such purposes.

The last consideration may reasonably affect the rule that forfeitures are not favored, and will not be judicially declared if the rights of the parties can be fully saved and

secured without. Or, the rule of forfeiture may be stated as in *Hall v. Delaplaine*, 5 Wis., 206, and *Button v. Schroyer*, id., 598; it will be mitigated or relieved against when it can be done without violence to the contract of the parties. The law in respect to forfeiture of contracts is really elementary, and is as claimed by the learned counsel of the respondent. See authorities cited in his brief. With the rules in respect to forfeitures established in those cases, and the ordinary rules of interpretation " to give the language its just sense, and to search for the precise meaning to give the contract the sense in which the promisor believed the other party to have accepted it, or in which he had reason to suppose it was understood by the promisee," and the practical interpretation of the contract by the practice and conduct of the parties under it, in view, we shall endeavor to place the proper construction upon it. I will not incumber and confuse the question by quoting more of the language of the policy than absolutely necessary to its elucidation, or obscure it by redundancy.

The matter of difference between the parties has already been sufficiently stated, and I will first quote those clauses of the policy by reason of which the defendant claims it to have been completely forfeited and determined, and then the clauses by reason of which the plaintiff claims the policy to be valid to the extent of four tenths of the whole amount of the insurance, as a paid-up policy of four years, and only forfeited as to the remainder:

*First.* After stating the consideration of the annual premium note, the language in brackets is " *the interest upon which must be paid annually in cash at the date of the maturity of the annual premium.*"

*Second.* After stating the terms of such proportion of tenths, as the complete payment of the annual premiums at the time of the default, the language is: " But in order to secure such proportion of the policy, *all premium notes*

*must be taken up, or the interest thereon be paid annually in cash, on the date of the annual maturity of the premium, until the notes are canceled by returns of the surplus, or the whole policy will be forfeited."* This language has the effect as a *condition* (1) to the payment of any proportion of the insurance less than the whole, and (2) to avoid the forfeiture of the whole policy. If the notes are paid and taken up, or canceled by returns of the surplus or dividends, then, of course, the interest thereon ceases; but if they are not, the interest must *all* be paid when due.

*Third.* In the first premium note given at the date of the policy for the first year, and in the other three notes also, after stating the interest at seven per cent. per annum, the language is, "*which interest shall be paid annually, or the policy be forfeited.*" The provision for payment at the expiration of the policy by death or limitation of time, is followed by the language, "the balance of the year's premium and all *notes* given for premiums, if any, being first deducted therefrom."

*Fourth.* The fourth express condition of the policy is that "in every case where this policy shall cease, or become null and void, all payments thereon shall be forfeited to the company."

It will be seen that there are four express conditions, or four repetitions of the same condition, upon which the whole policy and insurance will become forfeited at the option of the company. These provisions are so plain, clear, and explicit that there can be no ambiguity, uncertainty, or doubt. If in any or all of these specified cases the policy may, notwithstanding, be valid and effectual to secure to the assured the proportion of tenths of the insurance as provided for in another part of the policy, then all the above conditions and provisions are rendered entirely nugatory, and are in effect stricken from the policy. For if the payment of the cash premiums and of the interest for the first year is

not made, or the premium note given, the policy would, of course, not take effect for any purpose, and it would not be proper to call it a forfeiture. If, after the payment of the premiums and interest for the first year had been fully made, and no future premium notes given, or future premiums or interest paid, the policy would still be effectual for one tenth of the insurance, then in no case can there be a forfeiture of the whole policy, as provided for in the above contingencies.

We will now consider the provision or provisions of the policy which are claimed to have such a sweeping effect upon all these express conditions of forfeiture:

1. The policy provides that if default be made in the payment of any premium, the company is to pay the assured "as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default." This clause is followed by the above specified condition of forfeiture, beginning with the qualifying words, "But in order to secure such proportion," etc. In short, the provision so qualified is that on default of the payment of premiums the company shall pay as many tenths as the years in which all payments have been made; but, to secure such proportion, all the premium notes must either be taken up, or the annual interest thereon paid *in cash* when due, from year to year, "or the whole policy will be forfeited." This disposes of one clause upon which the learned counsel for the respondent relies.

2. The policy provides that "if the said premiums *or the interest upon any note* shall not be paid on or before the days mentioned for the payment thereof, at the office of the company, or to agents when they produce receipts signed by the president or secretary, then, and in every such case, the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, and the *remainder* shall cease and determine." On casual reading this might seem to conflict with these

several explicit clauses of *total* forfeiture by reason of the interest not being paid. But if this conflict can be avoided by any other reasonable construction of this provision from the language itself, it is of course the duty to so construe it. "If the premiums are not paid," is followed by the disjunctive " or if the interest is not paid." If either is *not* paid presupposes that *one has* been paid. Then what is the sense, on this necessary hypothesis? Why, most clearly, if the said premiums for any one year have been paid, or, if not so paid, the interest upon any note or upon all the notes' outstanding has been fully paid, that is, so long as such notes shall run and bear interest, then the assured may be entitled to as many tenths as the years in which such premiums were paid. The interest on any one note cannot be said to be paid annually in cash, and fully paid, for only a small part of the time in which such note runs or is outstanding. This suit is brought after the expiration of the policy. The condition of recovery of anything upon the policy by this clause is that the interest on any or all of such outstanding notes shall have all been paid. Another form of the sentence, with the same sense, may be adopted, and that is, if the premiums up to the time of the default and the whole interest on any premium note have been fully paid, then a recovery may be had for such proportion as may be due by reason of the full payments of certain years. To illustrate: The plaintiff brings this suit long after the expiration of the eleven years' time of the policy, and demands $400, as the four tenths of the whole insurance, because he has paid fully for four years. The defense is, that may be true, but he has not paid the interest on the first four premium notes, which has been accruing from year to year since that time, and for that reason a forfeiture is demanded of the whole policy. Those premium notes have not been taken up or paid, and they will continue to bear interest until they are so taken up or paid. They become due only at the expiration of eleven

years, the limitation of the policy, or at the death of the assured, by their terms. The interest thereon has been anticipated and appropriated by the company, as a fund certain to be paid, and paid *in cash*, and annually, so that the future interest upon such interest may be realized by the company.

We may say, therefore, that "the interest upon any note" means the *whole* interest on any note, without doing violence to the language of this clause of the policy. Such is the clear and obvious meaning of the language, and there is, therefore, no conflict between this provision and the other provisions quoted above. But if the language might possibly mean as claimed by the learned counsel of the respondent, from all the provisions of the policy constituting one general scheme, construed together to effectuate and carry out what the parties must have intended, such a construction would be compelled in order to give any force to several other provisions, perfectly clear and explicit, and to make such a method of insurance practicable and safe both to the insurer and the insured: *first*, the interest upon the premium notes is payable annually and *in cash; second*, at the expiration of the policy the balance unpaid of the premiums, and of the notes given for premiums, is deducted from the insurance; the notes cannot include the interest, for that is presumed to have been already paid in cash, and at the proper time; *third*, the surplus or dividend is applied to the payment of the principal of the notes, *pro tanto*, and such was the practice during the first four years without question, and the interest was paid *in cash* at the end of each year; *fourth*, by the construction contended for by the learned counsel of the respondent, the policy would not be an eleven-year policy, or until the death of the insured, but a *yearly* policy, or policy for *one* year; if the payments are all made for the first year, the assured may then stop and demand under this policy the one-tenth of the whole amount, or

$100, and then give his premium note, and pay the cash premiums and interest, and have an assurance for another year. If the law allowed the company to do this kind of business, most certainly the company would find it most unprofitable to do so. But this is not the scheme of endowment insurance. The company are compelled to forfeit all policies on the failure to pay the interest annually in cash, by the exigencies of their business, on this plan of life insurance. The theory that this system of giving premium notes is analogous to the assured paying the money to the company and borrowing it back upon annual interest, does not create one single reason against the above construction of the policy. The interest is made, and would be as important to the company, and its prompt annual payment as necessary to their business, by one theory as by the other. It was not only the practice of the plaintiff under this policy during the first four years to pay the interest annually *in cash*, and apply the dividends on the *principal* of the notes, but from the evidence it was and had been the invariable practice of the company to require and have the same to be so done, and in default of the payment of the interest in this way *to forfeit the whole policy*, and this practice was made the basis of their future plans of business, and indispensable to them, and the plaintiff is presumed to have had notice of it. *Fuller v. Madison Mut. Ins. Co.*, 36 Wis., 599.

It is forcibly said in *N. Y. Life Ins. Co. v. Statham*, 93 U. S., 24, by Mr. Justice BRADLEY: "All the calculations of the insurance company are based upon the hypothesis of prompt payment. They do not calculate on the receipt of the premiums when due, but upon compounding the interest upon them. It is on this basis that they are enabled to offer assurance at as favorable rates as they do. Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment."

In *Tuit v. N. Y. Life Ins. Co.*, 4 Big. Ins. Cas., 479, Judge

EMMONS said: " Out of a given number of insured persons, statistics show that there will be, on an average, a certain proportionate number of deaths each year, and in a mutual scheme the premiums to be paid each year by the whole number insured are fixed at such an amount as will make their sum total just sufficient to meet the losses arising from the average deaths during the year, and to provide for the unforeseen fluctuations of the law of average and other contingencies, including necessary expenses. If time were thus held not to be the essence of these unilateral life insurance contracts, it is difficult to see how a mutual company can escape ultimate if not speedy bankruptcy."

No other consequence than a complete forfeiture is contemplated from the nonpayment of the interest. It is only from default alone in the payment of the premiums that the policy may be valid for a proportion of the insurance. Where a forfeiture of the entire policy is so necessary and essential to the very existence of this plan of insurance, and to the continued business of the company thereon, and the language of the contract is so clear and explicit, and its sense so obvious, and the object and purpose so apparent, and when the cause and reason of the forfeiture have been so fully established, as in this case, the court cannot hesitate to so declare it. There can be no good reasons of public policy, equity, or common justice, and no well-reasoned judicial decision of other courts against it, in such a case, or under such a policy. The contract and the law both force it, and to allow a recovery of any proportion of the insurance in such a case would be a repudiation of the contract of the parties, and a substitution of one never made or contemplated by them.

This view of the case, and such a construction of the contract of insurance, have been sanctioned and approved by several late decisions of other highly respectable courts in cases of the same form of policy, and in cases where some

of the same provisions in the policy existed, but not the several conditions of forfeiture as in this. We shall cite only such cases as are found and commented on in the very able briefs of the learned counsel. In doing so, however, any extended quotations from the opinions in those cases will not be necessary; but any additional reasons therein not given above may be noticed.

In *Ohde v. N. W. Life Ins. Co.*, 40 Iowa, 357, the policy did not contain the several conditions of forfeiture for non-payment of interest on the notes, found in this policy, and yet the court construes the second condition of the policy upon which the plaintiff relies in this case to require the payment of the interest on the notes as a condition precedent to the recovery of any proportion of the insurance. The same in *Symonds v. N. W. Life Ins. Co.*, 23 Minn., 491; in *N. W. M. Life Ins. Co. v. Little*, 56 Ind., 504; in *Ins. Co. v. Bonner*, 36 Ohio St., 51; and in *Fithian v. N. W. Life Ins. Co.*, 4 Mo. App., 386.

In *N. Y. Life Ins. Co. v. Statham*, 93 U. S., 24, and in *Manhattan Life Ins. Co. v. Buck, ibid.*, the clauses of forfeiture were as to the nonpayment of the premiums, and it was held that the company were legally entitled to the forfeiture; but in the latter case it was held by a majority of the court that, the great civil war having intervened to prevent the payment, the assured was *equitably* entitled to what his interest in the policy, by reason of former payments, was worth; but there are strong dissenting opinions in that case that even such a cause was not an excuse to prevent a full forfeiture of the policy. The opinion of Mr. Justice BRADLEY as to such causes of full forfeiture is especially applicable to this case: " The contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but it is an *entire* contract of assurance for life [eleven years], subject to discontinuance and forfeiture for nonpayment of any of the stipu-

lated premiums.   Such is the form of the contract, and such is its character.   . . .   Each instalment is, in fact, part consideration of the entire insurance for life.   . . .   The *whole* premiums are balanced against the *whole* insurance."

In *St. Louis M. Life Ins. Co. v. Grigsby*, 10 Bush, 310, the terms and conditions of the policy were almost exactly the same as in this case.   The court held, however, that the interest on the premium notes might be paid *in dividends*, without citing any provision of the policy allowing it.   Here it is to be paid *in cash*, the whole of it, at the end of the year, and the dividends are applied upon the notes to reduce their principal.   In that respect the two policies may be different.   By this policy, when the time of its expiration arrives, the unpaid cash premiums, and the balance of the premium notes after the deduction of the dividends therefrom, are to be deducted from the insurance, and nothing is said about the interest which was to be paid annually in cash, and therefore to be compounded if not paid.   The yearly interest, when due, constitutes a new principal bearing interest, and would not be included in the term "notes." It is cash interest, to be paid promptly, while the principal of the notes need not be paid at all, but remains to be deducted from the insurance at the end of the policy.   It is admitted in that case that the condition of the policy was that the *entire* policy might be forfeited for nonpayment of the interest, but that such forfeiture was in the nature of a penalty; but the court refuses to enforce such a condition because it may be compensated in the same way as the non-payment of the premiums.   By what warrant of law or construction is the nonpayment of the interest placed upon the same footing as the nonpayment of the cash premiums, when the contract of insurance makes the first a condition precedent to the recovery of any part of the insurance, and the second forfeits that part only for the years beyond the full payment, and allows a recovery of a proportion as to

Ewald vs. The Northwestern Mutual Life Ins. Co.

the time in which the premiums were paid? Such a broad license of equitable construction of a contract, where time is made the essence, in respect to the performance of conditions upon which the very business of life insurance depends, cannot be approved.

In *Tait v. N. Y. Life Ins. Co.*, U. S. C. C. (Tennessee), 4 Big. Ins. Cas., 479, the policy provided for a full forfeiture on nonpayment of the premiums. In an elaborate and most able opinion of Judge EMMONS, it was held that the condition was essential to the business of the company, and the time of payment was the essence of the contract, and that the intervention of the civil war, even, would not excuse the nonperformance or affect the company's strict right of a forfeiture of the whole policy. But in *Hancock v. N. Y. Life Ins. Co.*, U. S. C. C. (Kentucky), 4 Big. Ins. Cas., 488, in a similar case it was held that the assured, being prevented by the civil war from further payment, after several years' payment of the yearly premiums, might recover *in equity* such damages as the plaintiff might have suffered in the matter, not, however, on the criterion of the actual premiums paid in the years before the default caused by the war. The legal right of the company to a full forfeiture of the policy was conceded, but the intervention of the war was supposed to have raised an equity in favor of the assured; that is, that under the peculiar circumstances the company ought in equity and good conscience to allow the assured something on the policy. But this ruling was opposed to numerous authorities cited by Judge EMMONS in 4 Big. Ins. Cas., 479, in cases of interruption of performance of such contracts by war. When, by a great preponderance of authority, it is held that even *war*, by which performance has become impossible, will not affect the right of an insurance company to declare an entire forfeiture of the whole contract, in which strict performance of conditions is made essential, and in default of which a forfeiture of the

entire contract is stipulated in clear and unmistakable terms, what should be said of the *Grigsby Case, supra,* of *Ohde v. N. W. Life Ins. Co., supra, N. W. M. Life Ins. Co. v. Little, supra,* and *Dutcher v. Brooklyn Life Ins. Co.,* 2 Cent. Law J., 153, or 4 Big. Ins. Cas., 665, and perhaps some other cases, where the assured, not only without cause or excuse, but wilfully and persistently, refused to pay the interest on the premium notes, and where the contract, in clear terms, makes such a default the condition of complete forfeiture, and it is yet held that only a partial forfeiture or a forfeiture *pro tanto* may be declared? The only apology for such cases is that they were decided in courts of equity, where equitable constructions may sometimes be allowed.

In *Russum v. St. Louis M. Life Ins. Co.* (St. Louis Court of Appeals), 5 Big. Ins. Cas., 243, the policy was precisely like the present one, and it was held, in an elaborate and learned opinion by Judge GRANT, that the entire policy is forfeited on failure to pay interest on the notes. The learned author of these reports, in a note appended to this case, in which other cases are reviewed, sums up the result of his investigations on this question as follows: "(1) This provision on the face of the policy of life insurance, that it will be forfeited for failure to pay interest on a premium note as agreed, will be respected and enforced in a court of law. (2) Equity will in proper cases afford relief from such a forfeiture, and enforce a settlement between the parties, such as will preserve the rights of both."

It may here be observed that if the assured may, in certain or proper cases where the performance became impossible or a great hardship, be allowed some equitable compensation for his investment of payments for a certain part of the time of the insurance, by what rule of equity or of law can the court say that such compensation shall consist of a *proportion* of the insurance under another stipulation of the contract, made with no reference to the nonpay-

ment of interest, but only of premiums? In the first class of cases there is some consistency in holding that the non-payment of the interest worked a forfeiture of the whole policy in law, but that in equity the assured should be allowed some reasonable compensation, to be determined by the peculiar circumstances of the case.

In *Moses v. Brooklyn Life Ins. Co.*, 50 Ga., 196, the policy provided for a two-years' policy on the payment of all the premiums for that time. For a part of such premiums notes were given. The condition of entire forfeiture was the failure to pay the premiums or the notes, or any part thereof, when due. The dividends were to be applied to the payment of the notes, but there was a balance of such notes unpaid. The plaintiff brought his bill in equity for a paid-up two-years' policy. The court dismissed the bill on the ground of such nonpayment of the notes.

In *Smith v. St. Louis M. Life Ins. Co.*, 2 Tenn. Ch., 727, the condition was the payment of the interest on the notes annually in advance, and it was held that a failure to so pay according to the condition worked a forfeiture, but held that the dividends might, under that policy, be applied upon the interest; and the court held the case to inquire whether such dividends as the insured was entitled to would be sufficient to discharge the interest. This was like the case of *Hull v. N. W. M. Life Ins. Co.*, 39 Wis., 397, in which it was provided that the dividends were first to be applied to the payment of the interest, and in that case the dividends exceeded the interest. It was a very different policy from this in many material respects, and may have been very properly called a non-forfeitable policy. The case of *N. W. M. Life Ins. Co. v. Ross*, 63 Ga., 199, follows the *Hull Case*, in passing upon a policy containing the same provisions.

In *Knickerbocker Ins. Co. v. Harlan*, 56 Miss., 512, the condition of forfeiture for nonpayment of interest was no stronger than in this policy, and not repeated as in this, and it

was held *imperative,* and that the nonpayment of the interest worked a complete forfeiture of the policy and of the whole insurance.    In this case the *Grigsby Case* is disapproved, as well as by five of the above cases holding the same rule.    In *Patch v. Phœnix M. Life Ins. Co.,* 44 Vt., 481, the same doctrine is held in respect to the same condition.    *Att'y Gen. of N. Y. v. North American Life Ins. Co.,* 82 N. Y., 172, is to the same effect.

A sufficient number of cases on both sides of the question has been cited and examined, and other cases cited in the respective able briefs of the counsel will add nothing to the weight or reasoning of the cases already cited.    The case was well prepared and most ably presented, and I regret that I am not better able to do justice to a question of so much importance.    It is not the business of courts to make contracts for parties, but only to enforce them.    If a forfeiture has been clearly and explicitly stipulated, it must be declared in a proper case according to the condition, and a party cannot justly complain of hardship from it, or ask relief against it, where, as in this case, he has suffered voluntary default.    The assured must be presumed to know and understand the various provisions of forfeiture in his own policy by which he may suffer loss through his own fault or negligence.    We cannot but hold that the learned county judge erred in his instructions to the jury on the meaning or construction of this policy.

*By the Court.*— The judgment of the county court is reversed, and the cause remanded for a new trial.

CASSODAY, J., took no part.