[S. F. No. 3606. Department Two.—December 29, 1903.]

## SARAH MADISON, Appellant, v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Respondent.

LIFE INSURANCE—CONSTRUCTION OF POLICY—FORFEITURE.—Where a policy of life insurance clearly called for the prompt payment of the cash portion of the annual premium notes as a condition upon which the company will hold itself liable to pay the whole amount of the policy, with deduction of the balance of the year's premium, and of all notes given for premiums, and its agreement to pay as many tenth parts of the original sum assured as there shall have been complete annual premiums paid, is on the express condition that "all premium notes must be taken up, or the interest thereon be paid annually in cash, on the date of the maturity of the premium, until the notes are canceled by returns of the surplus, or the whole policy will be forfeited," an additional provision, that "if the said premiums or the interest upon any note given for premiums shall not be paid on or before the days above-mentioned for the payment thereof, then, and in every such case, the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, and the remainder shall cease and determine," is not inconsistent with the previous provision for forfeiture, and the failure to pay the interest stipulated avoids the policy.

ID.—DEFAULT AFTER TEN YEARS—PAYMENT OF FOUR YEARS' PREMIUMS BY DIVIDENDS—MEASURE OF RIGHTS AND OBLIGATIONS.—Where the only default of the defendant took place after he had had the benefit of ten years' insurance, and occurred at a time when there were outstanding notes unpaid for principal and interest, which were the consideration for the insurance, and of which he paid no part, he could not, on the ground that the premium notes for the first four years had been paid by dividends, claim four tenths of the policy, as if he had defaulted at the end of four years and then

paid up the premium notes, whereas he had not in fact then defaulted. His rights and his obligations under the policy must be measured as of the time when the actual default took place, and non-payment of the premium notes then due, or of the interest thereon, forfeited the policy.

ID.—STIPULATION FOR FORFEITURE — PRESUMPTION — VOLUNTARY DEFAULT OF HOLDER.—A stipulation for a forfeiture in a contract will be enforced, if the rights of the parties cannot be otherwise preserved. The holder of a policy of life insurance will be presumed to understand its various provisions for forfeiture by which he may suffer loss through his own fault, and cannot complain of hardship from a forfeiture when he suffers voluntary default.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Kerrigan, Judge.

The facts are stated in the opinion.

W. A. Dow, and Van Ness & Redman, for Appellant.

Forfeitures are not favored in law. (*Palatine Ins. Co.* v. *Ewing,* 92 Fed. Rep. 111; *McNamara* v. *Dakota etc. Ins. Co.,* 1 S. D. 342; *Northwestern Mut. Life Ins. Co.* v. *Hazelett,* 105 Ind. 212.[1]) When the meaning of the policy is doubtful, it should be given such construction as the insured might reasonably have put upon it. (*Metropolitan Life Ins. Co.* v. *Drash,* 101 Pa. St. 278; *Northey* v. *Bankers' Life Assn.,* 110 Cal. 547; *Rankin* v. *Amazon Ins. Co.,* 89 Cal. 203, 209; *Laidlaw* v. *Mayre,* 133 Cal. 170, 179; *United States Life Ins. Co.* v. *Ross,* 57 Ill. App. 98; *Commercial Travelers' etc. Assn.* v. *Fulton,* 79 Fed. Rep. 428; *Thompson* v. *Phœnix Ins. Co.,* 136 U. S. 287, 297; *United States Mut. Assn.* v. *Newman,* 84 Va. 52.)

George A. Rankin, for Respondent.

The provision for forfeiture is clear, and there is nothing in the policy inconsistent therewith. (*Ewald* v. *Northwestern Mut. Life Ins. Co.,* 60 Wis. 431; Bliss on Life Insurance, secs. 182-185.)

CHIPMAN, C.—This is an action upon a policy of life insurance, and was submitted upon an agreed statement of

---

[1] 55 Am. Rep. 192.

facts. Defendant had judgment, and plaintiff appeals. The policy was issued upon the life of P. T. Madison, payable to his wife, plaintiff herein. The face of the policy is two thousand dollars, and was on what is termed "the ten-payment life plan with premiums payable annually, $87.42, and provided for payment of the premiums partly in cash and partly by note. The cash portion was $53.24, and the note portion was $34.18." The principal of the notes was not required to be paid before the death of the insured, but the interest thereon was to be paid annually. The dividends on the policy were to be applied to the payment of the notes. On July 16, 1867, the date of the policy, Madison paid the company cash $53.24 and executed to the company his note for $34.18, in full payment of the first annual premium. On July 16th of each succeeding year to and including the year 1872, he "duly and seasonably paid to the defendant herein, and defendant received and accepted the premiums required by the terms of the policy to be paid, viz., the said sum of $53.24 in cash, and his note for the sum of $34.18." On July 16, 1873, and each year to and including 1876, he paid no cash premiums, but, in addition to a premium note for $34.18 executed by him in each of said years, he executed to defendant, in lieu of the cash part of the premiums, notes as follows: 1873, for $53.24; 1874, for $71.06; 1875, for $78.88; and 1876, for $53.24,—which were received by defendant in addition to said premium notes for $34.18 each, executed during each said years in settlement of the premiums for said years, "subject to the terms of said policy." The note given in 1874 for $71.06 "included not only $53.24, the cash part of the annual premium, but also one year's accrued interest, then unpaid, on all these outstanding premium notes, given by the insured on account of said policy." So, also, the note given in 1875 for $78.88 included like items. The dividends payable out of the surplus referred to in the policy in the sum of $144.61 were credited to said policy prior to 1877, and were sufficient to take up and cancel four of said premium notes of $34.18, for the years 1867, 1868, 1869, and 1870, with a balance of $7.89 to be applied, and which was applied, on the fifth note bearing date July 16, 1871. No other or further dividends were earned upon said

policy, and said four notes referred to were returned to Madison canceled, and said credit of $7.89 given on said note of July 16, 1871. The interest on said first four notes last above enumerated was fully paid prior to their cancellation, and the interest on all the other notes given by Madison was duly paid by him in cash to July 16, 1876, except the interest which, as aforesaid, formed part of said notes of 1874 and 1875, for $71.06 and $78.88 respectively. "From July, 1876, no interest on either or any of the outstanding premium notes was or has been paid either in cash or otherwise;" and, "no premiums, either in the form of cash or note, or part cash and part note, have been paid since July 16, 1876, upon or on account of said policy, and none or either of the premium notes . . . have or has been in any form taken up, paid, or canceled and . . . are now held unpaid and uncanceled by defendant." The total premium notes given amounted to $598.22. Dividends earned and applied reduced this amount to $453.61 on July 16, 1876, the present amount of unpaid principal of outstanding notes. "The accrued interest paid at the beginning of each year on the total amount of premium notes at the end of the preceding year is as follows: 1868, in cash, $2.39; 1869, cash, $4.79; 1870, cash, $7.18; 1871, cash, $9.57; 1872, cash, $10.09; 1873, cash, $11.44. In 1874 the interest, $17.82, was included in the note for $71.06, and in 1875 the interest, $25.64, was included in the note for $78.88. In 1876 accrued interest, $34, was paid in cash. On these facts plaintiff claims four tenths, or eight hundred dollars, of the policy. Each of the premium notes contained the following: "With interest at the rate of seven per cent per annum, which interest shall be paid annually, or the policy be forfeited." A similar provision is also in the notes given in lieu of the cash premiums. All the notes are signed by P. T. Madison alone, except the premium note of July 16, 1872, which is signed also by plaintiff, Sarah Madison. Madison died November 9, 1900, having made no further payments.

The questions raised by the appeal involve the true construction and meaning of the policy and call for a statement of certain of its provisions, to wit: The company by the policy, "in consideration . . . of the annual premium in

advance, consisting of an annual premium note of thirty-four dollars and eighteen cents (the interest on which must be paid annually in cash at the date of the maturity of the annual premium) and of the annual cash premium of fifty-three dollars and twenty-four cents to be paid at or before noon on or before the sixteenth day of July in every year during the first ten years of the continuance of this policy, doth assure the life of . . . for the term of his natural life.'' The company agrees to pay the said sum assured, ''the balance of the year's premium, and all notes given for premiums, if any, being first deducted,'' etc. ''At each distribution of the surplus, after three years from the date hereof, a due proportion of such surplus on each year's business, during the continuance of this policy, will be returned to the said assured. And the said company further promises and agrees, that, if default shall be made in the payment of any premium, it will pay as above agreed, as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default. But in order to secure such proportion of the policy all premium notes must be taken up, or the interest thereon be paid annually in cash, on the date of the maturity of the premium, until the notes are canceled by returns of the surplus, or the whole policy will be forfeited. This policy is issued and accepted by the parties in interest on the following express conditions: . . . 3d. If the said premiums or the interest upon any note given for premiums shall not be paid on or before the days above mentioned for the payment thereof, . . . then, and in every such case, the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, and the remainder shall cease and determine. 4th. In every case where this policy shall cease or become null and void, all payments thereon shall be forfeited to the company.''

It is quite clear that the contract calls for the prompt payment of the cash portion of the annual premium notes as a condition upon which the company will hold itself liable to pay the whole amount of the policy, after first deducting the balance of the year's premium and all notes given for premiums, if any. Its agreement next to pay as many tenth

parts of the original sum assured as there shall have been complete annual premiums paid, should there be any de-default in the payment of any premium, is on the express condition that "all premium notes must be taken up, or the interest thereon be paid annually in cash on the date of the maturity of the premium, until the notes are canceled by return of surplus, or the whole policy will be forfeited." A clear and unmistakable forfeiture appears from the statement of facts, and we do not understand that if this was all of the contract appellant would dispute the inevitable result.

But it is contended that the provisions of the policy embraced in the third subdivision above quoted, are inconsistent with and contradictory of the provisions just referred to, and therefore that which leads to a forfeiture must be rejected.

A precisely similar policy of defendant company, where the facts were also similar, was before the supreme court of Wisconsin in *Ewald* v. *Northwestern Mut. Life Ins. Co.,* 60 Wis. 431. The questions now here were fully considered and many cases bearing thereon in other courts cited and commented upon. The conclusion was reached as stated in the *syllabi:* "A forfeiture stipulated in a contract will be enforced if the rights of the parties cannot otherwise be preserved. The holder of a policy of life insurance will be presumed to understand its various provisions for forfeiture by which he may suffer loss through his own fault, and cannot complain of hardship from a forfeiture when he suffers voluntary default. In an action commenced after the expiration of the term of the policy to recover four tenths of the original sum assured, *held* that by reason of the plaintiff's failure to pay annually in cash the interest upon the four premium notes given by him, the whole policy became forfeited."

In the case of *Russum* v. *St. Louis Mut. Life Ins. Co.,* 1 Mo. App. 228, the policy was subject to two provisos: First, that if default was made in the payment of any annual premium thereafter becoming payable, such default should not work a forfeiture of the policy, but the sum assured should be proportionately reduced; thus, if only the first annual premium should be paid, then, in case of death, only

one tenth of the sum assured should be claimable. If two premiums only were paid, then two tenths, and so on. The second proviso was a qualification of the first. It provided that "if the insured shall fail to pay annually in advance the interest on any unpaid notes or loans which may be owing on account of the above-mentioned annual premiums, . . . then and in every such case the said company shall not be liable for the payment of the sum insured, or any part thereof, and this policy shall cease and determine." It was there urged, as here, that the two provisions are inconsistent, and the one leading to forfeiture must be disregarded. It was held, after a careful examination of the provisions, that they are not inconsistent or contradictory; that they may stand together, and that it is the duty of the court to give effect to both of them; that the failure to pay the interest avoided the policy.

In *Moses* v. *Brooklyn Life Ins. Co.,* 50 Ga. 196, the policy was on the ten-year plan, with participation in the profits. The premium was payable part in cash and part by note, and one of the conditions of the policy was, that should the assured fail to pay the premiums, or any note or notes which may be given in part payment of any premium, the policy was to be void. It also stipulated that after two annual payments, should the party wish to discontinue, the company will issue a paid-up policy for as many tenths of the amount originally assured (which was fifteen thousand dollars) as there have been annual premiums paid in cash. The prayer of the bill was to have it decreed that the defendant issue a paid-up policy for three thousand dollars and deliver the notes given to the company canceled and receive the present policy canceled. The assured had made two payments, two premiums, part in cash and part by note. The court said: "The payment by complainant to the company of the two first annual premiums was a condition precedent to be performed on her part by the terms of the contract before she was entitled to have issued to her by the company a paid-up policy of three thousand dollars. To enable the company to pay dividends from the profits, it is indispensably necessary that the assured should pay to the company the annual premiums stipulated to be paid, so as to create a fund from which profits may be derived." It was held that the assured

was not entitled to a paid-up policy until the note given for the premium had 'first been paid.

In the Wisconsin case (*Ewald* v. *Northwestern Mut. Life Ins. Co.*, 60 Wis. 431) the policy was one of endowment issued in 1867, and the assured paid the cash premiums for· that and the three succeeding years, and also paid the interest on the premium notes given for those years, but nothing thereafter. The action was brought after the expiration of the policy. After quoting the third subdivision of the policy, stated above, the court proceeds at pages 438 et seq. to give its reasons at considerable length for the construction of the policy. We are satisfied with the result there reached, notwithstanding the very searching analysis of the opinion by appellant's counsel.

We do not think the assured could, by the terms of the policy, have been misled into the belief that he could have full insurance for ten years and then cease further payments, leaving his notes ˉunpaid, and yet have the right to a paid-up policy of four tenths, because the first four ɛnotes had been taken up by dividends in the mean time. If at the end of the fourth year he had paid the cash premiums and the premium notes and interest, and had then ceased or made default, he would have earned four tenths of the policy. But nothing in the policy warranted his continuing to pay his cash premiums, and to give his premium notes for six or seven years, thus obtaining full insurance for that time, and then default, and yet have the right to claim four tenths of the policy. In fact, his default, and his only default, was after he had obtained this full insurance for this period, and his default was at a time when there were outstanding notes still unpaid, principal and interest, which were themselves the consideration for the insurance. When he made default he could, by paying all the outstanding notes have had "as many tenth parts of the original sum assured as there shall have been complete annual premiums paid *at the time of such default,*" for thus reads the policy. But he could not, after having received the benefit of ten years' full insurance, make default, refuse to pay his outstanding obligations given for this insurance, and claim four tenths of the policy, as though he had defaulted at the end of four years. His election to

continue and reap the benefits of full insurance carried with it the reciprocal duty to discharge his obligations incurred to that end; and the rights of the assured and his obligations must be measured as of the date when he defaulted, and not of some prior date, by assuming what in fact did not occur, that he defaulted at this prior date. Appellant's contention would result in his having a paid-up policy for eight hundred dollars (four tenths of two thousand dollars); also a full insurance of two thousand dollars for ten years; also a return of all his notes canceled which he gave to secure this insurance. Such a construction would destroy any °company doing business under such a system, and finds no warrant in the terms of the policy. In point of fact, there was no default for the ten-year period, for the assured had paid in cash or notes. To keep the policy alive thereafter, obviously his duty was to pay the annual interest charge on his notes or take up the notes. He still had a considerable life expectancy, and rather than continue payment of interest charges he elected to quit, and we cannot find any warrant for ignoring these outstanding obligations and adjusting the loss as though they did not exist.

It is advised that the judgment be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

McFarland, J., Henshaw, J., Lorigan, J.

A hearing in Bank was denied on January 28, 1904.

Beatty, C. J., delivered the following dissenting opinion:—

BEATTY, C. J.—I dissent from the order denying a rehearing. The language of this policy was chosen by the defendant, and seems to have been chosen not for the purpose of expressing a clear intention, but rather with a view of giving it the appearance of intending one thing while really providing for something inconsistent. In one clause (clause 3) it provides that in a certain contingency there shall be a partial forfeiture of the policy, and this provision is set out

with considerable fullness and rotundity of expression. In another clause, by a half-dozen words at the end of a sentence, an absolute forfeiture is provided upon the same contingency. I do not think that the defendant is entitled to claim for itself the most favorable construction of a contract which it has purposely made ambiguous, and especially where the result is manifestly unjust.

In this particular case, perhaps, no serious injustice is done, for the notes given by the insured in payment of the premiums, which by the terms of the policy were payable only in cash, and were forfeitable in case of default, would, with interest, amount to as much as the unforfeited portion of the policy, and they, in my opinion, constitute a counter-claim in favor of the defendant.

But the principle of the opinion, applied to other claims upon similar policies, might work the grossest injustice. As, for instance, in the case put by counsel: "The insured may have paid *ten premiums* in cash and notes; he may have paid interest on these notes for many years, until all of them, except the last, have been canceled by dividends; he may then default in the payment of the annual interest on the last uncanceled note, *reduced by dividends to a nominal amount.* On the construction which the court gives the policy, the insured loses everything, although, if he had not paid *any part of the tenth premium,* he would have been entitled to nine tenths of the policy in paid-up insurance! Because he received term insurance for the *tenth year* for the face of his policy (which he could have purchased *for less than half the cash part of the tenth premium*), he is put in a worse position than if he had failed to pay any part of the tenth premium! Because he received something *which he more than paid for,* he must lose that which he fully paid for!"

A construction of this policy which would inevitably lead to such a result in the case supposed, and in other like cases, certainly has little to recommend it, and, in my opinion, may be avoided upon two grounds: 1. That the doubtful or conflicting clauses of an agreement should be construed against the party responsible for the ambiguity; and 2. Because a provision involving a total forfeiture should yield to a provision involving only a partial forfeiture.